## ATLANTIC & BIRMINGHAM RAILROAD COMPANY *v.* REYNOLDS.

1. Where a witness lives in one place, but pursues his regular daily vocation or work in another, where he has established a general reputation, another witness, called for the purpose of impeaching him for general bad character, who does not know his general reputation in the neighborhood where he lives, but does know his general reputation in the neighborhood where he works, is competent to testify upon the subject.
2. Upon the trial of an action against a railroad company for personal injuries, it is erroneous to charge the provisions of the Civil Code, § 2321, even with the words, "the presumption in all cases being against the company," omitted therefrom, when it appears that the damage complained of was not caused either "by the running of the locomotives, or cars, or other machinery of such company," or "by any person in the employment and service of such company." Even if the damage complained of were so caused, such a charge would be erroneous in such a suit brought by one of the railroad company's own employees.
3. A master who, after purchasing from another a permanent structure or plant for the carrying on of a particular business, puts his servant to work therein or thereon, is not liable to such servant for injuries sustained by reason of a latent defect therein, if the master has exercised ordinary and reasonable care to detect the same and has failed to discover it.

Submitted January 13,—Decided February 7, 1903.

Action for damages. Before Judge Dart. City court of Douglas. May 13, 1902.

*J. L. Sweat,* for plaintiff in error.
*Leon A. Wilson* and *Quincey & McDonald,* contra.

FISH, J. Reynolds sued the Waycross Air-Line Railroad Company for damages, alleged to have been sustained by him in consequence of injuries received by the falling of a telephone pole forming a part of a telephone line owned and operated by the defendant company, which pole he, in the course of his employment by the company as a lineman, had ascended for the purpose of repairing a broken telephone wire. In his petition he alleged that the pole in question fell while he was at the top of it, engaged in such work, and that the defendant was negligent, "in that it did not place said telephone pole a proper depth in the earth, the same having only been placed in the earth about fourteen inches, whereas it should have been placed therein about five feet; that if it had been placed in the earth said latter named depth, it would have

been secure and would not have fallen with . . petitioner." The petition was subsequently amended by alleging that, since the filing of the suit, the defendant had procured an amendment to its charter, by which its name was changed to the Atlantic and Birmingham Railroad Company, and this name was substituted in the petition in lieu of Waycross Air-Line Railroad Company. Upon the trial there was a verdict and judgment in favor of the plaintiff. The defendant moved for a new trial, which motion being overruled, it excepted.

1. One of the grounds of the motion for a new trial alleges that the court erred "in sustaining the objections of plaintiff's counsel to defendant's witnesses, C. J. Hendry, John Hayes, J. B. Quarterman, and Dan Hall, testifying that while they did not know plaintiff's reputation where he lived, in Waycross, yet they were well acquainted with him and knew his general reputation up and down the Waycross Air-Line Railroad where he worked, which was bad, and from that they would not believe him on oath." We think this ground was well taken, the plaintiff having testified as a witness in his own behalf, and this evidence having been offered for the purpose of impeaching him. The Civil Code, § 5293, provides: "A witness may be impeached as to his general bad character. The impeaching witness should be first asked as to his knowledge of the general character of the witness, and next as to what that character is, and lastly he may be asked if, from that character, he would believe him on his oath." It will be observed that there is nothing in this section which indicates that the impeaching witness must first testify that he is acquainted with the general character of the witness attacked, in the neighborhood where the latter lives. As the general reputation of a man is usually formed in the neighborhood where he spends most of his time and most frequently comes in social and business contact with his fellow-men, it is usual to limit the inquiry as to a witness's general character to his general reputation in the neighborhood where he lives, that is, where he has his home. We do not think, however, there is any hard and fast rule which requires this to be done in every possible case. The very reason for generally so limiting the inquiry may be a good reason for allowing more latitude in an exceptional case. The reason for so limiting the inquiry generally, as already indicated, is that the place in which to ascertain a man's true reputa-

tion is the place where people, generally, have had the best opportunities of forming a correct estimate of his character. It is obvious that this may not, in every instance, be the neighborhood where a man's home is situated. If a man's daily vocation is carried on in one place, while he has his home in another, and by reason thereof he has become better known to people, generally, in the former than in the latter, or as well known in the one as in the other, we can see no reason why a witness who is acquainted with his general reputation in the neighborhood where he pursues his daily calling should not be competent to testify upon the subject of his general character. We apprehend that there may be cases in which a person has established no general reputation in the immediate neighborhood of his home, but has established such a reputation elsewhere. This may arise from the fact that his home is located in one place and his daily business or work is carried on in another, in which latter place he spends nearly all of his time, and hence is well known to people generally, while he rarely comes in social or business contact with people, outside of his family circle, in the neighborhood of his home.

That the general reputation with which a witness called to impeach another, under this section of the Civil Code, must be acquainted, before he is qualified to testify upon the subject, is not necessarily confined to general reputation in the immediate neighborhood where the witness sought to be impeached resides, is shown by the decision of this court in *Boswell* v. *Blackman*, 12 *Ga.* 591. In that case the defendants in the court below introduced two witnesses for the purpose of impeaching Burrel Blackman, a witness who had testified for the plaintiff. These two witnesses testified that they had known the witness Blackman, for the last eight or ten years, in Russell County, Ala.; that he was generally known and had a general reputation in that county. Defendants then proposed to ask these witnesses if they knew the general character of Blackman for truth and veracity in the county of Russell. "The court ruled out the question, deciding that it should be confined to the character of the witness in the *neighborhood* where he lived." This ruling was excepted to, and this court held that it was erroneous. Nisbet, J., who delivered the opinion, said : "The impeachment must be by persons acquainted with the witness. And they are called to speak of his general character for

truth and veracity — not the world over, or in London, or Paris, or Columbus, but in that circle where his real character is best known, to wit, in the neighborhood where he lives.    Now, when a witness is generally known, and has a general reputation in a county, that county may be fairly considered his vicinage ; it is fair to infer, under such circumstances, that his true character for truth is as well known in that county, as men's character for truth ordinarily is known in their neighborhood."    In *Turner* v. *State,* 70 *Ga.* 766, it was held :    " Where one knows the general character of a witness in the town where he once lived, he may testify as to that character for veracity, although the witness has moved several miles into the country.    The weight of such testimony is for the jury."    Here, again, we see that the paramount idea is, that the witness called to impeach another must know what the general reputation of the latter is in a neighborhood or community the people of which have had good opportunities for ascertaining his true character, and that if the impeaching witness does know this, he is not disqualified to testify on the subject because he does not know what the general reputation of the other witness is in the particular neighborhood where he happens to live at the time that the attack is sought to be made upon his testimony.    In the present case, the witness sought to be impeached was a telephone lineman, who lived in Waycross, but was employed by the defendant railroad company to keep the wires and telephones of its telephone line, running along its railroad from Waycross to Fitzgerald, in proper order and condition ; and we think that witnesses who did not know his general reputation in the city of Waycross, but " were well acquainted with him and knew his general reputation up and down the Waycross Air-Line Railroad where he worked," were competent to testify as to his general character, and whether, from that character, they would believe him upon his oath, the weight of such testimony being a matter for the jury.

2.  Another ground of the motion for a new trial was, that the court erred in charging the jury as follows:  " A railroad company shall be liable for any damage done to persons, stock, or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary

and reasonable care and diligence." The charge given is in the exact words of the Civil Code, § 2321, except that the words, " the presumption in all cases being against the company," which conclude that section, are omitted. This charge was erroneous for two reasons. First, the plaintiff was not injured " by the running of the locomotives, or cars, or other machinery," of the defendant railroad company, nor was the damage which he sustained " done by any person in the employment and service of such company." See *Georgia Railroad Co.* v. *Nelms*, 83 *Ga.* 70 ; *Savannah, Florida & Western Railway Co.* v. *Flaherty*, 110 *Ga.* 335. In the latter case it was held : " When on the trial of an action against a railway company it affirmatively appeared that the damage complained of was not caused either ' by the running of the locomotives, or cars, or other machinery of such company,' or by some person in its employment and service, it was erroneous to charge that a presumption of negligence arose against the company." The fact that the court, in the charge complained of, omitted that part of the code section which expressly puts the presumption of negligence upon the railroad company does not relieve the charge from error. "Even with that clause omitted, the effect of the charge is to place the burden upon the company of showing that it has exercised all ordinary and reasonable care and diligence, as soon as evidence has been produced which satisfies the jury that injury has resulted in the manner indicated in the charge." *Western & Atlantic R. Co.* v. *Jackson*, 113 *Ga.* 356. The second reason why the charge was erroneous is, that, even if the plaintiff's injuries had been caused in either of the ways specified by this code section, the instruction would have been inapplicable in a suit against a railroad company by one of its employees. The precise charge which is here alleged to have been erroneous was complained of in the last-cited case, and this court sustained the assignment of error, upon the ground that " This section of the code has no application to a suit brought by an employee, for the simple reason that the presumption of negligence against the company referred to in the section does not arise in favor of an employee immediately upon proof that injury resulted in the manner referred to in the section."

3. The defendant, in writing, requested the court to charge the jury as follows : " That if they believe the telephone line in ques-

tion was erected at the point where the plaintiff claims to have been injured, under and by the direction of Capt. L. Johnson, as manager of the Waycross Lumber Co., who then owned it, and that subsequently said telephone line was transferred to the Waycross Air-Line Railroad Company, under whose management it has since been operated and was at the time of the alleged injury, the duty devolving upon and resting upon said railroad company, under such circumstances, would require it to use ordinary diligence to observe or ascertain defects or want of proper construction, and if found to exist, then to remedy the same; and if such diligence has been exercised and the Waycross Air-Line Railroad Company had no notice or knowledge that the particular telephone pole had not been placed a sufficient depth in the ground, if such were the fact, and there were no facts existing to put said railroad company on notice that such was the case, then and in that event said railroad company would be excused, and not liable for damages." The court refused to give this instruction to the jury, and in the motion for a new trial error was assigned upon this ruling. We think the court should have given this instruction. The law does not require the master to warrant that there are no defects in the machinery, tools, or appliances which he furnishes to his servant for the purpose of doing the work which the servant is employed to do, or in the place which he furnishes his servant in which to do the work, the existence of which may result in injury to the servant. The master is held to only ordinary care in furnishing his servant reasonably safe machinery, appliances, or tools, and a reasonably safe place to work, with which and where the servant may work with ordinary care and diligence. If there are latent defects in the machinery, tools, or appliances, or in the construction or condition of the place for work, which are known to the master, or which he could know by the exercise of ordinary care, and which are unknown to the servant, then the master must give the servant warning of the same. Civil Code, § 2611. A servant injured by reason of a latent defect or danger in the machinery or tools supplied, or in the construction or condition of the place for work, can not recover damages against the master, unless it be shown that the latter knew or ought to have known of its existence, and that the former did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known

thereof. Civil Code, § 2612. We cite these code sections because we think that the rule therein laid down in reference to the duty of the master in supplying machinery to the servant, with which to do the work for which he is employed, is applicable to the duty of the master in furnishing the place where the work is to be done. So, the principle announced in *Georgia Railroad Co.* v. *Nelms*, 83 *Ga.* 70, is applicable in the present case. There a railroad company was sued by one of its employees for injuries sustained by the breaking of a hammer furnished to him by the company, with which to perform the work which he was employed to do. It was shown that the hammer was defective, and broke while the plaintiff was using it, and flying pieces thereof caused the injuries of which he complained. This court held that " The mere fact that this and other hammers were defective, and that injury resulted therefrom, is not sufficient to authorize an inference of negligence on the part of the company in their purchase and selection." In the opinion Simmons, J., said : " We can not hold — for in our opinion it is not the law — that an employer is liable to his servant when he furnishes him with an axe, a wagon, a saw, a hammer, or any other tool which appears to be first-class, and which subsequently, by some latent defect, breaks and injures the servant. If such were the law, every farmer, contractor, or other employer would be liable to his employee when he furnished him tools and they broke and injured him on account of some latent defect which could not be ascertained by the exercise of ordinary care." To the same effect, see *Reid* v. *Central Railroad Co.*, 81 *Ga.* 694. We can see no difference, in principle, between the measure of the duty of a master who puts his servant to work with machinery or tools which the master has purchased from another, and that of a master who purchases a permanent structure or plant, for the carrying on of a particular business, constructed by another, and places his servant to work therein or thereon. In the one case the master is not liable to his servant for injuries resulting to the latter from latent defects in the machinery or tools, due to the negligence of the manufacturer, if he has exercised ordinary and reasonable care to discover them and has failed to do so ; and in the other case we can see no reason for holding the master liable to his servant for injuries resulting from hidden defects in the structure or plant, which the exercise of ordinary dil-

igence has failed to disclose to him. In the present case there was evidence from which the jury might have found that the telephone line which the plaintiff was engaged in repairing when he was injured was constructed and owned by the Waycross Lumber Company, and subsequently transferred by that company to the Waycross Air-Line Railroad Company, and that the pole in question, as it stood in the earth when the plaintiff ascended it, was a part of the permanent plant of the telephone line when the railroad company became the owner of it. This being true, the request to charge now under consideration was pertinent and relevant, and correctly stated the law applicable to the case, in the event the jury should so find, and therefore should have been given by the court.

As the errors of law dealt with above require the grant of a new trial, we do not deem it necessary to consider the grounds of the motion for a new trial which involve the sufficiency of the evidence, in any particular, to support the verdict, as upon another trial the evidence may not be the same.

*Judgment reversed. By five Justices.*