### 61822. AILSTOCK v. THE STATE.

CARLEY, Judge.
Appellant appeals from his conviction of simple battery.

1. The state, asserting that it expected appellant to "attempt to introduce testimony as to the character of the victim," filed a motion in limine to exclude *"any reference to the character of the victim of the crime absent [appellant's] prima facie showing that the victim was assailing the [appellant] at the time the crime was committed."* (Emphasis supplied.) The state, in support of its motion, cited several cases for the "well settled principle of law that evidence regarding the *character of a victim* of a violent crime is inadmissible absent" such a prima facie showing. (Emphasis supplied.) The cases cited by the state did not, however, support the overly broad contention that, absent a showing that the victim was the aggressor, evidence of his *character* may not be introduced. Rather, those murder cases merely stand for the "well settled principle of law" that the victim's *character for violence* is admissible only when there has

been a prima facie showing that three elements are present: that the deceased was the assailant; that deceased assailed defendant; and that defendant was honestly seeking to defend himself. [Cits.]" *Curtis v. State,* 241 Ga. 125, 126 (1) (243 SE2d 859) (1978). See also *Maynor v. State,* 241 Ga. 315 (245 SE2d 268) (1978); *Music v. State,* 244 Ga. 832 (262 SE2d 128) (1979). Despite defense counsel's repeated protestations that "character is one of the enumerated ways to impeach under Georgia law" and that should the victim of the battery take the stand he would be subject to impeachment under Code Ann. § 38-1804, the trial court granted the state's motion and excluded "any reference" to the victim's character absent a prima facie showing that he was the assailant. During the course of appellant's trial the victim testified. Appellant urges that the trial court, by granting the state's motion in limine, erroneously precluded the defense from offering evidence which would impeach the victim.

We agree with appellant that the trial court erred in granting the state's overly expansive motion. Obviously the "character" of the victim for purpose of *impeachment* is not at issue in murder cases, such as those cited by the state in support of its motion in limine. But where, as here, the "victim" can be and is a witness, he is subject to impeachment, as would be any other witness, "by evidence as to his general bad character." Code Ann. § 38-1804. Code Ann. § 38-1804 does not require that before a victim-witness in a battery case may be impeached by evidence of his bad character there must be a prima facie showing that he was the assailant. All the statute requires is that "[t]he impeaching witness should be first asked as to his knowledge of the general character of the witness, and next as to what that character is, and lastly he may be asked if, from that character, he would believe him on his oath." Therefore, insofar as the trial court's grant of the motion in limine prohibited "the introduction of properly offered evidence of [the victim-witness' bad character] which would otherwise be admissible [for purposes of impeachment], it was erroneous." *Gunthorpe v. Daniels,* 150 Ga. App. 113, 114 (257 SE2d 199) (1979).

The error was, however, harmless in the instant case. Appellant made a proffer of the impeaching witness' testimony which demonstrated conclusively that it was not "properly offered evidence" of impeachment under Code Ann. § 38-1804. Under that statute "[a] witness whom it is sought to impeach because of bad character must be shown to be of general bad character; special acts are not admissible. [Cit.]" *Davis v. State,* 60 Ga. App. 772, 774 (5 SE2d 89) (1939). Applying this standard to the proffered testimony of the "impeaching" witness in the instant case shows that it related to specific acts by, not the general bad character of, the victim and

was not admissible for the purpose of impeachment. *Andrews v. State,* 196 Ga. 84, 105 (26 SE2d 263) (1943). Moreover, it is questionable whether the proffered testimony was in fact truly offered for impeachment purposes. A close review of the transcript reveals that there was no material discrepancy between the victim's version of the incident and that offered by the appellant himself. The sole issue made by the evidence at trial was apparently whether, under a relative undisputed set of facts appellant was "justified" in striking the victim. This being so, the question arises whether the "impeaching" testimony would in fact have been offered to the jury only for the legitimate purpose of assessing the victim's credibility concerning the matters testified to and not to demonstrate to them that because of certain specific past occurrences he was a "bad" person. Cf. *Peters v. State,* 55 Ga. App. 870, 871 (3, 4) (192 SE 84) (1937). In general, whether the victim is a "bad" person is irrelevant because it is as unlawful to commit a crime against a "bad" person as against a "good" one. Cf. *Doyal v. State,* 70 Ga. 134, 148 (1883). We find any error in the grant of the state's motion in limine was, under the unique circumstances of the instant case, harmless beyond question.

2. Appellant urges that the trial court erroneously excluded testimony by a defense witness concerning the victim's reputation for using opprobrious or abusive language. Appellant contends that, under Code Ann. § 26-1306, he was relying upon the victim's "opprobrious or abusive language" as justification for the attack and that, by analogy to the "deceased aggressor" rule in homicide cases, he was entitled to present evidence that the victim had a general reputation for using such language. Under the "deceased aggressor" rule, evidence of the victim's general reputation for violence is admissible if a prima facie showing of self-defense is made. " ' "Proof of violent and turbulent character of the deceased is admissible only when it is shown prima facie that the deceased was the assailant, that the accused had been assailed, and that the defendant was honestly seeking to defend himself." [Cits.]' [Cit.]" *Black v. State,* 230 Ga. 614, 615 (3) (198 SE2d 314) (1973). Where such a prima facie showing is made, testimony concerning the victim's general reputation for violence is "admissible to corroborate the testimony of the accused that the deceased was violent on the occasion in question on the theory that a person with a general reputation for violence is more likely to have been violent toward the accused than a person with a gentle reputation." *Henderson v. State,* 234 Ga. 827, 830 (218 SE2d 612) (1975).

Assuming without deciding that there is an "opprobrious provoker" rule under Code Ann. § 26-1306 analogous to the

"deceased aggressor" rule in homicide cases, there was no error in excluding appellant's evidence in this regard in the instant case. If such an analogous rule exists, there must be an analogous foundation laid before it may be invoked. In other words, under such a rule there should be a prima facie showing that at the relevant time *(Haygood v. State,* 137 Ga. 168 (1) (73 SE 81) (1911)) the victim first used language opprobrious or abusive to the defendant *(Davis v. State,* 153 Ga. App. 528 (265 SE2d 857) (1980)) and that the defendant acted out of the sudden provocation and passion occasioned by the victim's utterance of such language. *Berry v. State,* 105 Ga. 683 (31 SE 592) (1898). No such showing was made in the instant case. There was no evidence that the victim used language which could be considered opprobrious or abusive immediately before he was struck by appellant. See *Davis v. State,* 153 Ga. App. 528, supra. Consequently, there was no evidence showing that the blow was delivered as a result of appellant's sudden passion at being provoked by hearing such language. *Cowart v. State,* 9 Ga. App. 169 (70 SE 891) (1911). Indeed, at most, the evidence showed that the physical attack was the result of the victim's long standing humiliating treatment of appellant culminating in certain derogatory remarks and actions directed toward appellant by the victim several hours earlier on the day of the incident. This does not raise the justification defense of Code Ann. § 26-1306. See generally *Berry v. State,* 105 Ga. 683, supra. "It is never a lawful act to commit an assault and battery because of *past* opprobrious words..." *Cawley v. State,* 74 Ga. App. 214, 215 (39 SE 2d 427) (1946). We therefore conclude that, even assuming an "opprobrious provoker" rule exists under Code Ann. § 26-1306, appellant failed in this case to lay the proper foundation for the invocation of such a rule. See *Dasher v. State,* 146 Ga. App. 118 (1) (245 SE2d 476) (1978). There was no error in excluding testimony by a defense witness that the victim had a general reputation for using opprobrious and abusive language. Furthermore, even if the proper foundation for such evidence had been laid, the proffer of the witness' testimony in this regard demonstrates that it would otherwise have been excludable as going to specific acts by the victim rather than his general character for "opprobrium." See generally *Borders v. State,* 114 Ga. App. 90 (3) (150 SE2d 306) (1966).

3. "When the defendant, in the trial of a criminal case, puts his character in issue the State (a) may cross-examine the witnesses offered by him in order to test their knowledge of his character, and (b) may also offer witnesses to prove his general bad character..., and (c) the State may, where the defendant has been previously convicted of a crime involving moral turpitude, introduce the record of such conviction in the manner provided by law." *Giles v. State,* 71 Ga. App.

736 (32 SE2d 111) (1944). Appellant made a pre-trial motion in limine to exclude evidence of his prior misdemeanor convictions. Relying on *Lewis v. State,* 243 Ga. 443 (254 SE2d 830) (1979), appellant urged that misdemeanors are not crimes involving moral turpitude and that prior convictions thereof "would not be admissible under any circumstances" in his trial. The trial court, properly we believe, denied appellant's blanket motion and agreed to rule on the admissibility of appellant's misdemeanor convictions if and when the issue arose during the trial. *Lewis* does not stand for the proposition that only felonies are crimes of moral turpitude. *Lewis* merely holds that a felony conviction for the sale of cocaine *is* a crime of moral turpitude. "As used in this state moral turpitude seems to mean infamy . . . Basically, it would seem that any crime designated as a felony and punishable by imprisonment would be a crime involving moral turpitude within the meaning of the law. Felonies are infamous." *Lewis,* 243 Ga. at 445, supra. It has long been the law that proof of conviction of a misdemeanor, if it is a crime of moral turpitude, is a proper method of showing "bad character." See *Andrews v. State,* 118 Ga. 1 (3) (43 SE 852) (1903). It follows that the trial court did not err in declining to exclude evidence of appellant's prior misdemeanor convictions until such time as appellant might put his character in evidence and it could be determined that appellant's prior convictions were for misdemeanors involving moral turpitude. See *Gunthorpe v. Daniels,* 150 Ga. App. 113 (1), supra.

Appellant contends even if it was not error to deny his motion in limine to exclude all evidence of his prior convictions, the state nonetheless impermissibly interjected the issue into his trial. During the course of appellant's testimony on direct examination he made the following observation about the victim, his foreman: "There is belligerence towards me in years past—I tolerate[d] him enough to make a living for myself and my son, and it was a good job that I had, it was a pretty good company." Also on direct examination, appellant made other passing references to his family.

On cross examination the following colloquy took place between appellant and the prosecution:

Prosecutor: Now one other thing you testified to on direct examination, if you can remember that, is that you were working hard trying to make a living for you and your son, is that right?

Appellant: Yes, ma'am.

Prosecutor: You said over and over again you were really concerned about making money for your son?

Appellant: Yes, ma'am.

Prosecutor: Isn't it true that you have been charged and convicted and been all over the place for failure to support that son?

Appellant: No, ma'am.

Prosecutor: You deny that that's true?

Appellant: I deny that that's true.

Prosecutor: Okay, sir.

After this exchange, appellant made a motion for mistrial which was denied. No curative action whatsoever was taken by the trial judge. We agree with appellant's assertion that it was error for the trial court to fail to take some curative action after the prosecutor interjected the issue of appellant's prior "charges and convictions" for nonsupport into the trial.

"[T]he general character of the defendant and his conduct in other transactions is irrelevant unless the defendant chooses to put his character in issue." *Bacon v. State,* 209 Ga. 261, 262 (71 SE2d 615) (1952). "Whenever the defendant puts his good character in issue as a fact, the State has the privilege of disproving this fact, . . . by cross-examination of the witness by whom the accused attempts to make the proof." *Moulder v. State,* 9 Ga. App. 438 (71 SE 682) (1911). See also *Giles v. State,* 71 Ga. App. 736, supra. It is apparent that in the instant case the prosecutor was attempting to cross-examine appellant concerning his prior charges and convictions on non-support on the basis that appellant had opened the door to such cross-examination by testifying on direct that he "tolerated" the victim in order to make a living for his son. See *Brown v. State,* 237 Ga. 467 (2) (228 SE2d 853) (1976). Appellant's testimony on direct examination did not, however, have the effect of placing his general character in issue. See *Barber v. State,* 95 Ga. App. 763, 764 (2b) (98 SE2d 575) (1957). It was, therefore, impermissible for the prosecutor to couch her cross-examination of appellant in terms of prior "charges and convictions" for nonsupport. See *Stanley v. State,* 94 Ga. App. 737 (96 SE2d 195) (1956). The trial court should have taken some corrective action after appellant's motion for mistrial was made and it was error not to do so. *Stanley v. State,* 94 Ga. App. 737, supra; *Ralls v. State,* 87 Ga. App. 655 (75 SE2d 26) (1953); *Gore v. State,* 124 Ga. App. 398 (184 SE2d 24) (1971). The fact that appellant responded negatively to the question and that the prosecutor did not follow up on this line of questioning does not cure the error we find in failing to take some curative action. *Gore v. State,* 124 Ga. App. 398, supra. The prejudice to appellant occurred when the prosecutor, in her cross-examination, injected appellant's character into issue in the trial. Appellant should never have been called upon to negative the attack upon his character implicit in the prosecutor's question. Even assuming appellant had been convicted for child abandonment, that circumstance was not shown to be relevant in the instant case under any exception to the "other transactions" rule of Code Ann. § 38-202

and, appellant not having put his own character into issue, inquiry on cross-examination concerning his prior convictions was impermissible. Cf. *Stanley,* 94 Ga. App. 737, supra; *Ralls v. State,* 87 Ga. App. 655, supra. See also *Rewis v. State,* 109 Ga. App. 83 (134 SE2d 875) (1964). That the prosecutor did not compound the prejudice by continuing the line of questioning (see *Mikle v. State,* 236 Ga. 748 (225 SE2d 275) (1976)) does not, in our opinion, cure the error in failing to instruct the jury that the original inquiry into appellant's character was impermissible. *Stanley v. State,* 94 Ga. App. 737, supra. The trial court should have taken some corrective measures to remove from the minds of the jurors any improper impression occasioned by the prosecutor's impermissible questioning. It was error requiring the grant of a new trial to fail to do so.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED SEPTEMBER 10, 1981.

*Michael C. Garrett,* for appellant.
*Patricia Warren,* for appellee.