## 44282. HUGHES v. THE STATE.
## 44303. JACKSON v. THE STATE.
(357 SE2d 80)

HUNT, Justice.

Arthur Lee Jackson and Robert Lee Hughes were convicted for the 1979 felony-murder of Eddie Lee Allen, co-owner of Lee and Eddie's Barbecue restaurants in Macon. Both were sentenced to life in prison. They appeal separately: Hughes in Case No. 44282 raising issues concerning venue, the denial of his motion to sever, admission of hearsay evidence and of the testimony of a "newly-discovered" witness, and the sufficiency of the evidence; Jackson in Case No. 44303, raising only the denial of his motion to sever. We affirm in both

cases.[1]

In December 1985 defendant Hughes confided in two fellow inmates at the Jones County jail that he, his sister, Helen, and her common law husband, co-defendant Arthur Lee Jackson, were responsible for the unsolved 1979 armed robbery and murder of his sister's former employer, Eddie Lee Allen. Bibb County authorities were notified and the investigation reopened, resulting in the indictment of these defendants and Hughes' sister.

Evidence was produced at trial that the defendants and Hughes' sister planned and attempted to commit an armed robbery at the restaurant where the sister worked. Another employee interrupted the plan, but the armed intruder was identified as defendant Jackson. After that incident, the sister did not return to work.

A few days later, on the evening of November 9, 1979, defendant Hughes was refused beer at Lee and Eddie's because he did not have proper identification, and during the resulting fight with the victim's son, threatened that "they wouldn't sell me beer but I'll kill your daddy tonight. He'll never see another sunrise." Later that very night, the victim and his wife, Lee, were returning home with the day's proceeds when they were accosted outside their home by two armed men wearing ski masks. The victim was shot and about $1,000 in cash, the victim's .38 pistol, and his wife's purse were taken.

1. In their only common enumeration of error, the defendants raise the denial of their motions to sever their trials. Each complains that statements of one of them made after the crime was committed were improperly admitted into evidence without limiting instructions that these statements could not be considered against the other. Relying on *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), they urge that the trial court was required to sever their trials. *Bruton*, however, is inapplicable here as that case involves introduction of the in-custody confessions of co-defendants at a joint trial where both defendants do not testify. We have often held that confessions to the police end the conspiracy and are not admissible under the conspiracy rule. OCGA § 24-3-52. That is not, however, the case here.

Under OCGA § 24-3-5, a conspiracy between these two defend-

---

[1] The crime was committed in November 1979, and the defendants were indicted in the February term of 1986. The trial was held on June 24-27, 1986. The trial transcript was certified on August 13, 1986.

Hughes' motion for new trial was filed on July 9, 1986 and denied on December 10, 1986. His notice of appeal was filed in the trial court on December 31, 1986; then docketed here on January 20, 1987 and submitted for decision an March 6, 1987.

Jackson's motion for new trial, which was filed on July 24, 1986, was denied on December 10, 1986. His notice of appeal was filed on January 8, 1987, and the case docketed here on January 29, 1987 and submitted for decision on March 30, 1987.

ants was shown and the statements of one were admissible against the other. OCGA § 24-3-5 provides that "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators *during the pendency of* the criminal project shall be admissible against all."[2] This statute was held constitutional in *Dutton v. Evans*, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970). In the case before us, the state produced ample evidence of a conspiracy: Jackson revealed that a ring found in the victim's wife's pocketbook that his common law wife, defendant Hughes' sister, then had because they were afraid to do anything with it in case it be traced back to them; the gun taken from the victim was a .38, and the defendants sold a .38 caliber gun, along with some others, sometime soon after the killing; the aborted robbery attempt involving Jackson and Hughes' sister; and Hughes' threats against the victim the evening of the murder.

Although defendant Jackson did not testify at trial, his own statements to three friends shortly after the killing the same night that he had "just killed a cracker," and "that stupid Lee Lee [defendant Hughes] left some money in the road," provide some evidence of a conspiracy between them. (A policeman who examined the scene of the crime testified that a box with some of the money still in it was found there.) Thus Jackson's own statements tend to prove the conspiracy, making Hughes' statements admissible against Jackson.

By the same token, Hughes' statements to his fellow jail mates about the crime also support the fact of the conspiracy making Jackson's statements admissible against him. The fact that Hughes' statements were made six years after the commission of the crime does not alter this conclusion.[3] The statements were not made to police officers and may be said to have been made during the concealment phase of the conspiracy. It is clear that, at the time, Hughes was in prison for other reasons and this crime had not yet been solved. *Mooney v. State*, 243 Ga. 373, 391 (254 SE2d 337) (1979); *Crowder v. State*, 237 Ga. 141, 152 (227 SE2d 230) (1976).

Accordingly, it also was not an abuse of discretion to refuse to sever these defendants' trials on that basis, *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975), nor to fail to charge that the "confession" of one defendant could not be considered against the other.[4]

Thus, the appeal of defendant Jackson in Case No. 44303 is af-

---

[2] Compare OCGA § 24-3-52 ("The confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself.")

[3] In fact, Jackson threatened to kill one of the three women to whom he had first revealed the crime sometime later when, because of a rift in their friendship, she said she was going to report it to the police. (She in fact told the police twice, but the leads were not then pursued.)

[4] The in-custody confession of Hughes was not admitted at trial, presumably in order to avoid such a *Bruton* error.

firmed. The remaining enumerations relating to defendant Hughes' appeal are considered below.

2. Hughes complains that a change of venue should have been granted. He points to the fact that during voir dire a large percentage (24%) of the available jurors, especially the black ones (48%), were excused for cause because they knew about the facts of this case or the facts of the other murder for which Hughes was being held in the Jones County jail. The effect of these excusals was that a disproportionately small number of blacks were left in the jury pool. After two and one-half days of voir dire during which the extent of the publicity about the case became clear, the defendant made a motion for change of venue, which the trial court denied.

In *Street v. State*, 237 Ga. 307, 311 (227 SE2d 750) (1976), we concluded after a careful review of United States Supreme Court cases, that "to find that the petitioner did not receive a fair trial, petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible." Applying that test later in *Kesler v. State*, 249 Ga. 462, 472 (291 SE2d 497) (1982), we observed that "[t]he second test involves review of the voir dire examination of potential jurors." The defendant, however, has failed to provide us a means to make such a review by failing to supply us with a transcript of the voir dire of the jury. We must therefore conclude that the trial court did not abuse its discretion in denying the defendant's motion for a change of venue.

Nor can we say that because jurors who admitted some prior knowledge of the crime were excluded, the defendant was denied his constitutional right to an impartial jury. Due to the notoriety of the case in the black community, more blacks than whites had some prior knowledge of the case and were excluded for cause. This fact, however, does not reflect that "purposeful discrimination" condemned in *Batson v. Kentucky*, 476 U. S. ___ (106 SC 1712, 90 LE2d 69) (1986) and its progeny.

Additionally, there can be no merit to the defendant's argument that later trial testimony, revealing that the defendant had been in the Jones County jail, may have jogged the memories of those blacks who were selected for the jury because they claimed no recollection of the articles which appeared in the newspaper. Because this complaint arises from pure speculation, we will not grant a new trial based on its premise.

3. In his next enumeration of error, defendant Hughes claims error in the refusal of the trial court to grant a mistrial when the state produced a surprise witness about whom the jury had not been qualified. The surprise witness was the son of the victim, who related the story, included above in the facts, that defendant Hughes was the

person who, on the night of the murder, had threatened to kill his father for refusing to sell him beer without the proper identification.

Apparently, when the son attended the first day of the trial and saw the defendants, he recognized defendant Hughes as being the one who had made the threat that night in 1979. He revealed these facts to the state, and the state decided to call him as a witness the next day. The defense was apprised of this fact, and the trial court recessed to give the defendants two hours to interview this witness. The trial did not commence until the next day, when this witness was vigorously cross-examined. Additionally, the defense called a witness who saw that confrontation and testified that she did not hear defendant Hughes threaten the victim.

Hughes argues that the son should not have been allowed to testify. OCGA § 17-7-110 provides that "[p]rior to his arraignment, every person charged with a criminal offense shall be furnished with a copy of the indictment or accusation and, on demand, with a list of the witnesses on whose testimony the charge against him is founded. Without the consent of the defendant, no witness shall be permitted to testify for the state whose name does not appear on the list of witnesses as furnished to the defendant *unless the prosecuting attorney shall state in his place that the evidence sought to be presented is newly discovered evidence which the state was not aware of at the time of its furnishing the defendant with a list of the witnesses.*" (Emphasis supplied.) The state complied with the emphasized portion of the statute and admitted that even though it knew of the threat to the witness' father the night of the killing, it did not know that one of the defendants had made the threat. Furthermore, the state had also already revealed the fact of the threat to the defense under the requisites of *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

We find no abuse of discretion. A delay in the commencement of the trial allowed the defense time to reassess its strategy and to call a necessary witness. The defendant has shown no actual prejudice. *Lakes v. State,* 244 Ga. 217, 218 (259 SE2d 469) (1979).

4. The evidence is sufficient to allow a rational jury to find either defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 24, 1987.

*Cook & Shaffer, William D. Gifford,* for appellant (case. no. 44282).

*R. Glen Galbaugh, John E. Goodner,* for appellant (case no. 44303).

*Willis B. Sparks III, District Attorney, Charles H. Weston, Thomas J. Matthews, Assistant District Attorneys, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General, for appellee.*