77083. MARTINEZ v. THE STATE.
(375 SE2d 123)

SOGNIER, Judge.

Francisco Martinez was convicted of the offense of aggravated assault and he appeals.

1. Appellant contends the trial court erred by refusing to allow him to question Edward Hoffman regarding the general reputation of the victim, Robert Smith, in order to impeach Smith. The trial court refused to admit this evidence based on the fact that Hoffman and Smith were inmates incarcerated at Georgia State Prison in Reidsville where the assault on Smith occurred. Appellant is likewise an inmate, serving a 20 year sentence for armed robbery and a 10 year sentence for aggravated assault. The proffered evidence showed that Smith has a bad reputation at the prison.

At trial, Smith testified appellant ran up behind him while Smith was lending a magazine to Gustavo Nelson, a co-defendant, and that appellant repeatedly stabbed Smith in the back and the head while Nelson held him. Nelson testified he was not present when the fight started, but arrived shortly thereafter. Appellant testified that after he had seen Smith in possession of some personal items taken from appellant's cell the day before, appellant approached Smith and told him to return his belongings. Appellant stated Smith then cursed him and pulled out a piece of wire, with a rag for a handle, which Smith

used as a weapon against appellant. Appellant testified that after Smith stabbed him twice in the head and three times in the legs, appellant managed to get the weapon away from him as they struggled on the floor and that appellant then stabbed Smith in self-defense. Although various other witnesses at trial testified to what they saw before the fight was stopped, there was no testimony from anyone who had observed the start of the fight and no evidence was adduced that corroborated either Smith's or appellant's version as to how or why the fight began.

The record thus reveals that the merits of appellant's self-defense claim, his sole defense to the charge against him, could have been determined by the jury solely by weighing the credibility of appellant's testimony against the credibility of Smith's testimony. "As a general rule, and particularly when the evidence is conflicting, a party may show any fact or circumstance that might affect the credit of an opposing witness. [Cit.]" *Arnold v. State*, 163 Ga. App. 10, 13 (4) (293 SE2d 501) (1982). "Impeachment is the process whereby an attack is made on the credibility of a witness." Agnor's Ga. Evid. (2nd ed.), § 5-1. Although the witness whose credibility appellant sought to attack was the victim, "where, as here, the 'victim' can be and is a witness, he is subject to impeachment, as would be any other witness, 'by evidence as to his general bad character.' [Cit.]" *Ailstock v. State*, 159 Ga. App. 482, 483 (283 SE2d 698) (1981). We note that this is not a case in which the sequence of questions under OCGA § 24-9-84 was improperly asked, compare *Harper v. State*, 157 Ga. App. 480, 482 (3) (278 SE2d 28) (1981), or where the impeachment testimony either related to inadmissible specific acts or was not material because no actual conflict existed in the evidence. Compare *Ailstock*, supra at 483-484.

Two arguments have been set forth as to why the impeachment evidence appellant sought to introduce was not admissible. The State argues before this court that evidence impeaching a witness by reputation is relevant only if it is the witness's reputation in a community or neighborhood consisting of law abiding citizens. Because a penal institution composed of convicted felons cannot be the type of honest and upright "community" or "neighborhood" required for the purposes of OCGA § 24-9-84, the State argues evidence of Smith's reputation therein was properly excluded.

OCGA § 24-9-84 provides: "A witness may be impeached by evidence as to his general bad character. The impeaching witness should first be questioned as to his knowledge of the general character of the witness, next as to what that character is, and lastly he may be asked if from that character he would believe him on his oath." Nothing in this section indicates that the impeaching testimony is limited solely to the reputation of the challenged witness in a neighborhood com-

posed of law abiding citizens. "[T]he place in which to ascertain a man's true reputation is the place where people, generally, have had the best opportunities of forming a correct estimate of his character. It is obvious that this may not, in every instance, be the neighborhood where a man's home is situated." *Atlantic &c. R. Co. v. Reynolds*, 117 Ga. 47, 48-49 (1) (43 SE 456) (1902). See also *Pethel v. State*, 89 Ga. App. 8, 10 (1) (78 SE2d 428) (1953). The fact that Smith's "neighborhood" is the penal institution in which he is incarcerated and which is composed of his fellow inmates does not negate the fact that the penal institution is the place where people have had the best opportunity to form a correct estimate of Smith's character. Thus, for the purposes of this "exceptional case," see *Atlantic R. Co.*, supra at 48 (1), Smith's "neighborhood" is the penal institution where he is incarcerated and we find no merit in the State's argument.

The other argument, relied upon by the trial court in sustaining the State's objection to this testimony, is based on the premise that since all the inmate-witnesses were subject to impeachment for their crimes involving moral turpitude (see *Beasley v. State*, 168 Ga. App. 255, 256 (1) (308 SE2d 560) (1983)), evidence showing that a convicted felon's general reputation among his fellow convicts was bad and that his incarcerated cellmates would not believe him under oath, was not relevant and could not be considered by the jury. Under the circumstances presented by this appeal, however, we do not agree with the trial court that the impeachment evidence appellant sought to introduce was irrelevant and "an absolute waste of time."

The jury in this case was well aware that all the parties to the assault, as well as most of the witnesses at trial, were convicted felons. The jury was also aware, from the trial court's charge, that witnesses convicted of crimes involving moral turpitude are unworthy of belief. However, despite the jury's knowledge that all of the testimony by the convicts was untrustworthy, the jury was nevertheless faced with conflicting testimony on a material issue which required it to determine which convict to believe, Smith or appellant. We cannot say under these circumstances that the fact that Smith's reputation was bad even among his fellow inmates would not have affected the jury's consideration of the credit to be given Smith's testimony.

Thus, the trial court's order sustaining the State's objection to " 'the introduction of properly offered evidence of (the victim-witness' bad character) which would otherwise be admissible (for purposes of impeachment) . . . was erroneous.' [Cit.]" *Ailstock*, supra at 483. "The exclusion of the testimony of this character witness, based on the sole ground that reputation [of a convict among other convicts] cannot be considered, was error; and, in view of the importance of the testimony of the witness sought to be impeached, was necessarily harmful and demands a reversal of the case." *Pethel*, supra at 10 (1).

See also *Gilstrap v. State*, 250 Ga. 814, 816-817 (2) (301 SE2d 277) (1983).

2. Since the factual circumstances surrounding appellant's motion for continuance will not be present upon retrial, we need not address the denial of that motion as presented in appellant's second enumeration. As to appellant's enumeration regarding the trial court's order requiring him to wear leg irons in court during trial, it is well established that "the accused, while in the presence of the jury, should be free of indicia of guilt such as wearing shackles or prison garb, or being surrounded by uniformed security personnel, or anything else that might infringe upon the presumption that he is innocent. [Cit.]" *Collins v. State*, 164 Ga. App. 482, 484 (4) (297 SE2d 503) (1982). While the use of restraining devices does not always amount to error of constitutional dimensions, id., the cases holding no error was presented by the use of such devices have always relied on detailed, demonstrable evidence set forth in the record to support the infringement by the court on the defendant's presumption of innocence. See, e.g., *Dennis v. State*, 170 Ga. App. 630, 632 (317 SE2d 874) (1984) (court recited facts that convict-defendant had struggled with guards at arraignment and insulted court officials; plus jury charge on subject); *Thomas v. State*, 171 Ga. App. 306, 308 (4) (319 SE2d 511) (1984) (defendant had escaped three times: twice from county jail and once from courthouse while in leg irons). Upon retrial of this case, circumstances comparable to those set forth above should be demonstrated clearly in the record to avoid elevating the use of leg irons or other restraining devices to error of constitutional dimensions. See *McKenzey v. State*, 138 Ga. App. 88, 89-90 (1) (b) (225 SE2d 512) (1976).

*Judgment reversed. Carley, J., concurs. Deen, P. J., concurs specially.*

DEEN, Presiding Judge, concurring specially.

I can concur fully with this case except for the citation of *McKenzey v. State*, 138 Ga. App. 88, 89-90 (1) (b) (225 SE2d 512) (1976). In the latter case Judge Quillian relegated it to the status of a physical precedent only by voting, "concurs in the judgment only, but not with all of the statements made therein."

Not knowing precisely with which statements he disagrees in the cited case, I am not sure we could or should rely upon it in the case *sub judice*, as the cloud or shadow of *McKenzey* may fall upon our instant case, rendering it suspect.

DECIDED OCTOBER 31, 1988.

*Hugh J. McCullough*, for appellant.
*Dupont K. Cheney, District Attorney, David C. Walker, Assistant District Attorney*, for appellee.