A93A1137. REID v. THE STATE.
(437 SE2d 646)

COOPER, Judge.

Appellant was convicted of armed robbery (two counts) and possession of a firearm during the commission of a crime (two counts). He appeals from the judgments of conviction and sentences.

The victims, Mr. and Mrs. Talbert, were guests at a motel along I-20 for the evening. At about 10:15 p.m., while Mrs. Talbert was watching television and Mr. Talbert was dozing, they heard a knock at their door. Mr. Talbert twice asked who was there and twice heard the word "service" in response but saw no one when he looked through the peephole in the door. After waiting a minute, Mr. Talbert

opened the door slightly to see if anyone was there. By the time he saw appellant and two other young men crouching in the doorway, the three young men smashed through the door, pressing a gun against Mr. Talbert's chest and flipped him over a nearby table onto the floor. Appellant then stepped on Mr. Talbert's chest, shoved the gun in his face and threatened to blow his head off if he moved. While the other two men emptied Mrs. Talbert's purse, took Mr. and Mrs. Talbert's wallets and searched the room for more cash, appellant forced the gun in and out of Mr. Talbert's mouth, breaking and chipping several of his teeth, and then shoved the gun forcefully into Mr. Talbert's cheek. Eventually appellant marched the victims into the bathroom where they locked themselves in. After hearing the perpetrators leave, the victims rushed out into the parking lot but saw no trace of the robbers. The case was assigned to Gary Palmer, a criminal investigator for the Columbia County Sheriff's Department.

Appellant and two co-defendants were subsequently arrested while fleeing from another motel robbery in a nearby county. Because the robberies were almost identical, Investigator Palmer informed the victims he had some suspects and sent a photographic lineup to Dade County, Florida, where the victims lived. The lineup contained only six photographs, including those of appellant and his two co-defendants. Lieutenant Rutledge of the Metro Dade Police conducted the photographic lineup with each victim individually. Although they were not certain with respect to the two co-defendants, both victims immediately and positively identified appellant as the man with the gun. At trial, both victims positively identified appellant and the two co-defendants as the three men who robbed them. The jury found appellant guilty but acquitted the two co-defendants on all counts.

1. Appellant first contends that he was denied a fair and impartial trial because he was required to wear leg irons throughout the trial. "Art. I, Sec. I, Par. XI of the [1983] Georgia Constitution mandates that '(i)n criminal cases, the defendant shall have a public and speedy trial by an impartial jury.' ' "(A) defendant being tried for a criminal offense on a plea of not guilty was entitled, at common law, to make his appearance free from all shackles or bonds. This is also the present rule, and the right is recognized as an important component of a fair and impartial trial." (Cit.)' [Cit.] ' "(O)ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on the grounds of official suspicion, indictment, continued custody or other circumstances not adduced as proof at trial." (Cit.)' [Cit.] [The accused is] entitled to have a trial free of restraint and 'free of partiality created by the use of (shackles) except where special circumstances exist, which in the discretion of the trial judge, dictate added security precautions. (Cit.)' [Cit.]" *Mapp v. State*, 197 Ga. App. 7 (397 SE2d 476)

(1990). However, " 'where there is good and sufficient cause, the court has discretion in requiring a defendant to be handcuffed or shackled for security reasons. (Cits.) Abuse of [that] discretion is the test on appeal where restraining devices have been used in the trial court. (Cit.)' [Cit.]" *Brewer v. State*, 199 Ga. App. 710 (2) (405 SE2d 899) (1991).

We note, initially, that there is no contention that appellant was forced to appear at trial wearing prison garb. Compare *Mapp v. State*, supra. The trial judge in this case required appellant and his co-defendants to wear leg irons because all had been recently convicted of armed robbery in a neighboring county and were already serving life sentences for that violent crime. The three defendants were tried together in a small courtroom with multiple exits and at most four guards, and those guards were coming and going, often leaving the floor, as they performed other duties. In the absence of evidence that appellant had a history of attempted escape or of violently disruptive behavior in the courtroom or in jail, or that he had made threats against the witnesses, the trial judge or others, the bare fact that appellant had a prior conviction for armed robbery would not give rise to the *exceptional* circumstances authorizing the presiding judge to put the accused on his trial wearing handcuffs, manacles, or shackles. See *Hicks v. State*, 200 Ga. App. 602, 603 (409 SE2d 82) (1991) (physical precedent); *Mapp v. State*, supra; *McKenzey v. State*, 138 Ga. App. 88, 89 (1b) (225 SE2d 512) (1976) (physical precedent). Compare *Allen v. State*, 235 Ga. 709, 711-712 (221 SE2d 405) (1975); *Potts v. State*, 259 Ga. 96, 100 (3) (376 SE2d 851) (1989). The possibility of four guards being too few is not a circumstance to be remedied by denigrating the presumption of innocence. The trial court abused its discretion in this instance by requiring appellant to remain shackled during trial, in the absence of exceptional circumstances.

This abuse of discretion is subject to the test for harmless error. See *Martinez v. State*, 189 Ga. App. 69, 72 (2) (375 SE2d 123) (1988). While the leg irons were not totally hidden from the jurors' view, the trial court made efforts to avoid bringing them to the jury's attention, sending the jury out whenever the defendants needed to stand or move about. See *Hicks v. State*, 256 Ga. 715, 719 (9) (352 SE2d 762) (1987). Moreover, all three defendants wore the leg irons, and while appellant was convicted, his two co-defendants were acquitted. Under these circumstances, we cannot conclude that the presence of physical restraints on appellant's legs deprived him of a fair and impartial trial. The decision to require appellant to remain in shackles, although made in error, was harmless beyond a reasonable doubt.

2. Appellant next argues that the victims' identification testi-

mony should have been excluded because the pre-trial photographic lineup was impermissibly suggestive. Specifically, he asserts that more than six photographs should have been used since there were three suspects and that Detective Palmer should not have told the victims that the suspects were in custody and that their pictures would appear in the lineup. Admission of testimony regarding a pre-trial identification is error only if the identification procedure was impermissibly suggestive *and* it appears that, under the totality of the circumstances, the suggestiveness of the procedure gave rise to a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Mobley v. State*, 198 Ga. App. 497 (3) (402 SE2d 100) (1991); *Pack v. State*, 182 Ga. App. 618 (356 SE2d 557) (1987). "Merely because [appellant's co-indictees were included in] the six [photographs] did not make the lineup impermissibly suggestive. [Cits.]" *Jackson v. State*, 209 Ga. App. 53, 54 (1) (432 SE2d 649) (1993). As to the detective's statement that the suspects were in custody and would be included in the lineup, "such statements . . . should be avoided[.] [Nevertheless,] a witness called to view a lineup must suspect that police believe there is some reason to have the witness view the lineup. The holding of the lineup is suggestive in and of itself, [but] the statement complained of here was no more suggestive than was the lineup itself. A lineup is not per se unconstitutional." *Mitchell v. State*, 236 Ga. 251, 254-255 (2) (223 SE2d 650) (1976). "Since the pre-indictment lineup procedures were *not* impermissibly suggestive, so as to lead to an 'all but inevitable' identification of appellant, he has failed to establish even the first prong of the relevant inquiry. [Cit.] The trial court did not err in [admitting at trial] the eyewitness identification testimony. [Cit.]" *Jackson v. State*, supra.

Furthermore, the bare possibility of taint in pre-indictment photographic lineup procedures does not mandate the exclusion of in-court identification testimony by an eyewitness. "As to the in-court identification, even where a pre-trial identification has been found to be tainted, a subsequent in-court identification is admissible if it does not depend upon the prior, tainted identification but has some other, independent basis. [Cit.]" *Jacobs v. State*, 207 Ga. App. 714, 715 (1) (429 SE2d 256) (1993). In this case, Mr. Talbert testified that he has good eyesight and the room in which he and his wife were robbed was well lighted. The robbers were not disguised, and Mr. Talbert was able to look right into the face of the man with the gun for at least several moments before he was told to keep his eyes down. Mr. Talbert further stated that he focused his attention on the man's face during his ordeal so that he would be able to remember it. Mrs. Talbert also testified that the room was well lighted and that she got a good look at the man holding a gun on her husband. Both victims positively identified appellant's photo as that of the gunman without

hesitation. Moreover, both victims testified that their in-court identifications were based on their opportunity to view appellant at the time of the crime. Thus, under the totality of the circumstances, " '[w]e find no substantial likelihood of irreparable misidentification on either the pretrial or in-court identification of the [appellant] as the [perpetrator] of the [offenses] in question. (Cits.)' [Cit.]" *Pack*, supra at 620. Accordingly, the trial court did not err in allowing the victims' identification testimony.

3. In his third and fourth enumerations of error, appellant makes several arguments relating to the admission of testimony from two deputies regarding an incriminating statement made by one of the three co-defendants. The deputies testified that they picked up the three defendants in McDuffie County and drove them to court. The defendants were sitting in the back seat of the patrol car, talking and laughing, and one of them said, "If we would have shot them, we wouldn't be here today." Neither deputy could identify which defendant made the statement, but none of the three articulated disagreement, and all three laughed. On cross-examination, defense counsel attempted to place the statement in context by asking one of the deputies what else the defendants were talking about, and the response included references to McDuffie County and a Judge Stevens.

(a) Appellant asserts that the trial court erred in allowing testimony regarding the incriminating statement even though the deputies could not identify the speaker and compounded that error by denying his motion to sever his trial from that of his co-defendants, neither of whom testified at trial. He also contends that it was unfair to allow the deputies' testimony because the speaker was actually talking about a different armed robbery when he made the statement, but appellant could not explain this without impugning his own character. Citing *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), appellant argues that these rulings deprived him of his right to cross-examine witnesses against him. However, the incriminating statement about shooting the witnesses was admissible against all defendants as the statement of a co-conspirator made prior to the termination of the conspiracy. OCGA § 24-3-5. Compare OCGA § 24-3-52. The relation of such an incriminating statement by the earwitness is not an unconstitutional infringement of the right to confront or cross-examine adverse witnesses. See, e.g., *Mooney v. State*, 243 Ga. 373, 390 (3) (254 SE2d 337) (1979). As the statement is incriminating only to the extent it tends to establish the existence of a conspiracy and is not the custodial confession of a non-testifying accomplice which details the criminal participation of appellant, we find *Bruton v. United States*, supra, inapplicable. The admission of the statement overheard by the deputy did not mandate severance of the parties for trial nor a limiting instruction to the jury that such a "con-

fession" by one co-defendant could not be considered against the others. *Hughes v. State*, 257 Ga. 200, 202 (1) (357 SE2d 80) (1987).

(b) Lastly, appellant contends the trial court erred in denying his motion for mistrial after co-defendant's counsel in attempting to provide a context for the incriminating statement, elicited brief references to McDuffie County and Judge Stevens. It appears that McDuffie County was the site of the other motel robbery, and Judge Stevens was the judge who sentenced all three defendants to life after they were convicted of that robbery; however, the jury did not know this. These passing references to another county and another judge did not place appellant's character in evidence. See, e.g., *Ogles v. State*, 238 Ga. 716 (235 SE2d 384) (1977); *Cochran v. State*, 177 Ga. App. 471 (3) (339 SE2d 749) (1986). Accordingly, it was not error to deny appellant's motion for mistrial.

*Judgments affirmed. Beasley, P. J., and Smith, J., concur specially.*

BEASLEY, Presiding Judge, concurring specially.

I concur fully in Divisions 2 and 3 and, with respect to Division 1, I agree that no reversible error occurred. However, we need not reach the difficult question of whether allowing the defendant to remain shackled under the total circumstances was legal error in the first place, since the conclusion is that it was harmless. For the purposes of this case, we can simply assume arguendo that it was error. Nevertheless, the majority decides the question and arrives at an answer with which I cannot agree.

The record is sparse with respect to the environment, facilities, and circumstances, but it does show that the defendant was under a life sentence for a violent crime, he was present with two similarly sentenced co-defendants, the courtroom was small, the judge was concerned about security and was fearful that the four officers could not handle the three if they decided to make trouble, and the judge arranged that the leg shackles would remain as unobtrusive as possible, keeping defendants seated while the jury was present. The majority's recognition of the court's precautionary measures to replace any impact of the leg irons on the jury comes close to saying that the court's handling of the matter was not an abuse of discretion.

It was the responsibility of the court to assure the safety of everyone in the courtroom, as well as to prevent an escape which would endanger the general public. An increased number of armed guards as an alternative has been recognized by this court as more visible to the jury, and thus possibly more prejudicial, than leg irons. See *Collins v. State*, 164 Ga. App. 482, 484-485 (4) (297 SE2d 503) (1982). The court did not abuse its discretion.

I am authorized to state that Judge Smith joins in this special

concurrence.

DECIDED NOVEMBER 5, 1993.

*Peter D. Johnson,* for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.