S89A0332. MONTGOMERY v. THE STATE.
(389 SE2d 209)

BELL, Justice.

The appellant, Johnny Montgomery, was convicted of the murder of his girl friend, Denise Driskell, of the possession of a firearm by a convicted felon, and of the criminal use of an article with an altered I.D. The trial court sentenced Montgomery to life in prison for murder and to concurrent five-year terms in prison for the two other crimes.[1] We affirm.

Daphne Washington, Montgomery's aunt, testified that on Octo-

---

[1] The crimes occurred on October 9, 1988. Montgomery was indicted on February 14, 1989. Following a jury trial, Montgomery was found guilty on May 12, 1989. Montgomery filed a notice of appeal on June 5, 1989. The court reporter certified the transcript on July 21, 1989, and the case was docketed in this court on July 28, 1989. The case was submitted for decision on briefs on September 8, 1989.

ber 9, 1988, she left her home around 4:00 or 5:00 p.m. When Washington returned about 5:30, she found Montgomery and Driskell at her house. According to Washington, Driskell was crying, had blood running out of the side of her mouth, had a deep bite mark on one of her hands, and had a cheek that was puffy and red. Washington took Driskell into the bathroom to talk to her. Driskell asked Washington if Washington would call Driskell's mother. Washington said that she would do so, but that because she did not have a phone in her house, she would have to leave the house to make the phone call. Washington added that Driskell was scared for her to leave, grabbed her shirt several times before she left, and said she wanted to get away from Montgomery. Washington told Driskell to stay in the bathroom, and Washington then left the house and called the police.

Washington stated that she did not give Driskell a gun before leaving, and did not see a gun in the bathroom when she and Driskell were talking. She stated that she and Driskell were in the bathroom for about thirty minutes, and were close to one another, and that she would have probably seen the gun if Driskell had been carrying one. Driskell had on a thin dress at the time. Washington also added that Montgomery was wearing a zip-up jacket and a tight pair of jeans, and that she did not notice a gun of any kind on him.

When Washington came back to her house after calling the police, the police had arrived on the scene. At that time, Driskell and Montgomery were locked inside the bathroom. The officers who stood outside the bathroom door asked Montgomery to release Driskell. Montgomery said he would release Driskell if the officers would go away. The officers repeatedly called out to Driskell but never got a response. However, the officers at one point heard Driskell whimper and say "Help, he won't let me out." Several minutes thereafter, the officers heard movement in the bathroom, then two shots, then a short pause, and a third shot. The police then broke open the bathroom door, and discovered Montgomery lying on the floor with Driskell on top of him. The gun was lying on Montgomery's chest, just below his neck. Driskell had suffered three gunshot wounds and died as a result thereof.

Robert Clemensen of the state crime lab analyzed hand wipings of Driskell and Montgomery to determine the presence of gunshot residue. He testified that his tests revealed the presence of gunshot residue on Driskell's hands but not on Montgomery's hands. However, he noted that this finding did not eliminate the possibility that Montgomery could have fired the weapon. He stated that he had another employee of the crime lab fire the weapon in question twice (with two bullets recovered from the weapon). This test firing failed to reveal the presence of gunshot residue on the employee's hands. Clemensen testified such a result is not unusual. Finally, he noted

that the presence of gunshot residue on Driskell's hands could have been caused by Driskell having her hands close to the muzzle of the gun when it was fired.

Dr. Charles Hawkins, who performed an autopsy on Driskell, testified that, in addition to the three bullet wounds, Driskell had superficial abrasions on her face, some clotted blood in her nose, multiple lacerations on her gums, a deep laceration on her left thumb that penetrated to the bone, and multiple abrasions on the right hand and left knee.

At trial Montgomery testified that he acted in self-defense. He related the following sequence of events. On October 9 Montgomery was looking for Driskell and some friends told him Driskell was at a "crack" house. He walked to the house and found her sitting at a table, smoking cocaine with some friends. He told her that he came back to Georgia from Pennsylvania for her "for nothing because she wanted to live . . . her life revolved around drugs and things of that nature, whereas I don't smoke and I don't even drink and do things of that nature." Montgomery and Driskell then went to Washington's house, where they began arguing, because Montgomery would not give Driskell money to buy drugs. Driskell hit Montgomery hard several times, and he hit her back. Driskell then told Montgomery to unzip his pants, because she wanted to determine whether he had engaged in sex with another woman. After Montgomery did so, Driskell grabbed his privates and began pulling very hard. Montgomery then hit Driskell and did "everything he could" to get loose. At that point Washington came home, and took Driskell into the bathroom.

When Washington left to use the telephone, Montgomery went into the bathroom to help Driskell. He asked her if he could take her to the doctor. Driskell, however, shut the door, drew a gun on him, and threatened his life. The police arrived about 10 to 15 minutes later, and Driskell told Montgomery to tell the police that if they left, Driskell and Montgomery would come out of the bathroom. Subsequently, Driskell, who was holding the gun with both hands, pulled the hammer back on the gun. Montgomery grabbed Driskell by the hands and tried to turn the gun away from both of them. Driskell pulled the trigger, shooting herself.

1. In his first enumeration of error Montgomery contends that the evidence was insufficient to support the verdict of murder. However, having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Montgomery guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his second enumeration of error Montgomery contends that the trial court erred in allowing the introduction of evidence of a prior conviction for driving under the influence. However, we find that the

trial court properly allowed this evidence for impeachment. See *State v. Byrd*, 255 Ga. 665 (341 SE2d 455) (1986).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 22, 1990 —
RECONSIDERATION DENIED MARCH 28, 1990.

*Brown, Phillips & Scoccimaro, Jimmie H. Brown,* for appellant.

*Britt R. Priddy, District Attorney, Johnnie M. Graham, L. Earl Jones, Assistant District Attorneys, Michael J. Bowers, Attorney General, Richard C. Litwin,* for appellee.