## S00A0075. WILLIAMS v. THE STATE.
### (528 SE2d 518)

SEARS, Justice.

Appellant Willie Williams appeals his conviction for murder, aggravated assault, illegal firearm possession and interference with government property,[1] claiming, among other things, that the trial court erred in refusing to grant a motion to change venue because the trial setting was inherently prejudicial. Finding no evidence of record to support appellant's contentions, we affirm.

The evidence of record shows that appellant overheard the two victims, Richardson and Reuteler, inquire where they could buy marijuana, and offered to sell some to them if they gave him a ride home from the Thomasville, Georgia, restaurant where he worked. Appellant entered the back seat of Richardson's car and directed him to a house where appellant said his cousin lived. When Richardson honked the horn, co-defendant Willie Jabari Wade exited the house. Appellant handed Richardson a revolver, exited the car, and spoke with Wade. Richardson placed the gun on the car's back seat.

Appellant and Wade then both entered the back seat of Richardson's car. Appellant again told the victims that he would take them to get marijuana, and directed Richardson to a dead-end road where they pulled into a clearing. Appellant and Wade exited the car, and Richardson heard a gunshot. Reuteler curled up in the passenger seat, grabbed his head, and shouted, "[t]ake me to the hospital, he shot me, he shot me." Richardson turned the car around and saw appellant charging at the car and firing shots at it. Richardson heard three shots, the third of which shattered through the car's window and entered his left cheek.

Richardson drove to a bowling alley where an employee called 911. Reuteler was later pronounced dead due to gunshot wounds to

---

[1] The crime was committed on December 26, 1998, and appellant was indicted on May 11, 1999, on charges of malice murder, felony murder, two counts of aggravated assault, three counts of illegal firearm possession, and criminal interference with government property. He was tried on June 29-30, and found guilty on all counts. The felony murder and aggravated assault counts were merged with the malice murder count and appellant was sentenced to life imprisonment for murder, plus five separate five year sentences on the remaining counts. His notice of appeal was filed to the Court of Appeals on July 9, 1999, and the transcript was certified on September 2, 1999. The appeal was transferred to this Court on September 16, 1999, docketed on September 27, 1999, and submitted for decision without oral argument.

his head and chest. A ballistics expert determined that a bullet recovered from Reuteler's body was fired from a .22 caliber revolver.

Appellant and Wade were apprehended on the evening of the murder. Appellant gave two taped statements in which he admitted that he fired the first shot, although he claimed that the gun discharged accidentally when he exited the car.

Additionally, Officer Rowan of the Thomasville Police testified at trial that at the police station, appellant was sitting at a desk while being interviewed by Sgt. Shiver. Rowan overheard appellant yelling and using profanity and then heard a loud noise. Upon entering the interview room, Rowan saw that Shiver was restraining appellant, and that the desk top had been ripped completely off its base.

1. The evidence of record, when viewed most favorably to the verdicts, was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. The trial court did not err in denying appellant's motion to suppress his statements to police, made shortly after his arrest. Prior to making the statements, appellant was read his rights, stated that he understood them, and signed written waiver forms.[3] Contrary to appellant's contention, we find there was no possibility that the statements were likely to confuse or mislead the jury. The statements were highly relevant to both the State's case and appellant's claim of accident, and were properly admitted.

3. The trial court did not abuse its discretion in denying appellant's motion to change venue. Appellant claims that his motion should have been granted because, since Thomasville is a small and tightly-knit community, members of the venire were likely to know persons associated with either the crime or the State's investigation and prosecution of appellant, thereby rendering the trial setting inherently prejudicial.

However, appellant's assertion, standing alone, was not a sufficient basis for a change of venue. The trial court's relevant inquiry in deciding appellant's motion was not whether the community remembered or was familiar with the case being tried, but rather " 'whether the jurors at . . . trial had such fixed opinions that they could not judge impartially the guilt of the defendant.' "[4] A movant for a change of venue based upon excessive pretrial publicity has the burden of proving " '(1) that the setting of the trial was inherently prejudicial, or (2) that the jury selection process showed actual preju-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] OCGA § 24-3-50; see *Gober v. State*, 264 Ga. 226, 228 (443 SE2d 616) (1994).

[4] *Crawford v. State*, 257 Ga. 681, 683 (362 SE2d 201) (1987).

dice to a degree that rendered a fair trial impossible.' "[5]

Our review of the record in this case reveals nothing to indicate that the venue in which this action was tried was inherently prejudicial, or that the jury selection process created an atmosphere of actual prejudice, as appellant claims.[6] The trial court identified only two jurors who stated they had actually either read or heard about the case, and noted that those individuals also stated affirmatively that they were able to set aside what they had heard or read, and to impartially consider the evidence.[7] The jury selection process was not transcribed, and appellant points to no other evidence of record indicating that the trial court abused its discretion in denying his motion to change venue.[8]

4. Appellant contends the trial court abused its discretion in denying his motion for a mistrial. The motion was made at the beginning of voir dire, after a prospective juror left the courtroom crying. It appears that the juror had asked to be excused due to her advanced age. The trial court denied appellant's mistrial motion, but stated that the juror would be excused from service on the jury, because she did not appear to be in "any condition to be observant and pay attention throughout the trial." Immediately thereafter, the trial court asked counsel whether they wished to raise any other matters in connection with the jury's seating, and defense counsel responded in the negative. By failing to renew either his objection or his mistrial motion after the trial court took curative action with regard to the upset juror, appellant has waived this enumeration on appeal.[9] Furthermore, notwithstanding appellant's failure to preserve this issue for appeal, we find no abuse of discretion in the trial court's refusal to grant a mistrial in this instance.

5. The trial court did not err in refusing to grant appellant's *Batson* motion,[10] in which he claimed that the prosecution had failed to offer a race-neutral explanation for the strike of juror Jenkins. The prosecutor explained that he struck juror Jenkins because Jenkins admitted during voir dire that he was related to an individual whom

---

[5] *Happoldt v. State*, 267 Ga. 126, 128 (475 SE2d 627) (1996).

[6] See *Roundtree v. State*, 270 Ga. 504 (511 SE2d 190) (1999).

[7] See *Brady v. State*, 270 Ga. 574 (513 SE2d 199) (1999).

[8] Appellant's assertion that he was forced to exhaust his permitted peremptory strikes to exclude prospective jurors who claimed some knowledge of the case is not supported by the record, and we reject his claim that the trial court erred in refusing to strike for cause several other jurors with limited knowledge of the case. Without some showing that such jurors were unable to lay aside what they knew of the case and consider the evidence impartially, this is not a basis for claiming that the jury selection process was prejudicial. See *Brady*, supra; *Johnson v. State*, 262 Ga. 652 (424 SE2d 271) (1993).

[9] *Schirato v. State*, 260 Ga. 170, 172 (391 SE2d 116) (1990); *Fann v. State*, 254 Ga. 514, 517 (331 SE2d 547) (1985).

[10] See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

the prosecutor had prosecuted in the past. This explanation satisfied the dictates of *Batson*.[11]

6. The trial court did not err in admitting into evidence a spent .22 caliber bullet casing found at the scene of the crime, and a photograph of that same bullet casing. A ballistics expert determined that a shell recovered from victim Richardson's car was a .22 caliber shell and the two bullets recovered from deceased victim Reuteler's body also were .22 caliber bullets. Appellant admitted in his statement to the police that he fired a .22 caliber gun at the crime scene. Hence, these items were relevant and admissible.[12]

7. Appellant's remaining enumerations of error have not been properly preserved for appeal, and hence will not be considered in this opinion.[13]

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 1, 2000.

*George A. Bessonette*, for appellant.

*J. David Miller, District Attorney, Robert R. Auman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General*, for appellee.

---

[11] *Slade v. State*, 270 Ga. 305 (509 SE2d 618) (1998).

[12] See *Monsalve v. State*, 271 Ga. 523 (519 SE2d 915) (1999); *Thompson v. State*, 168 Ga. App. 734 (310 SE2d 725) (1983).

[13] These include claims that: (1) the State sought to impeach its own witness at trial (see *Brinson v. State*, 268 Ga. 227 (486 SE2d 830) (1997)); (2) the trial court erred by not permitting appellant to call co-defendant Wade as a witness, despite the latter's invocation of his Fifth Amendment rights (see *Earnest v. State*, 262 Ga. 494 (422 SE2d 188) (1992)); and (3) the trial court abused its discretion in reopening the introduction of evidence in order to allow the State to introduce a jailhouse letter written by appellant to Wade (see *Carruth v. State*, 267 Ga. 221 (476 SE2d 739) (1996)). Appellant's claim that the trial court erred by permitting the jury to consider charges of felony murder and aggravated assault is moot, as those counts were merged with the appellant's malice murder conviction.