S00A1297. GAREY v. THE STATE.
(539 SE2d 123)

HINES, Justice.

Jonathan Garey appeals his conviction for felony murder while in the commission of aggravated assault in connection with the

shooting death of Tonya Jones. He challenges the admission of certain expert testimony as violative of discovery provisions, fundamental fairness, and due process; the effectiveness of counsel; and the sufficiency of the evidence. Finding the challenges to be without merit, we affirm.[1]

Garey had a romantic relationship with Jones, and the two planned to move into an apartment together. However, after a few months the relationship began to deteriorate. Around 8:30 p.m. or 9:00 p.m. on September 7, 1998, Garey picked up Jones at her home. Jones entered the silver Cadillac Garey was driving, exited, and then reentered the car. The couple appeared to be arguing. During the drive, Jones confronted Garey about a "passion mark" on his neck, and Garey admitted that the mark was from an encounter with another woman.

Garey kept a handgun, purchased by Jones, under the armrest of the car. He testified at trial to the following: The couple drove to Niskey Lake, a rather secluded area. Jones was upset about their deteriorating relationship, and after he parked the car, she picked up the pistol and told him that she was going to either "do [Garey] or do her"; Garey exited the car then reentered a short time later; Jones picked up the pistol, held it in her left hand, pointed it at her head, and pulled the trigger.

After the shooting, Garey did not call the police or for an ambulance even though he had a cell phone with him. Nor did he contact Jones's family. Garey admitted that, instead, he pulled Jones out of the car and pushed her down an embankment. He then fled the scene. Garey drove to a friend's house and tried to wash the blood off the car; he lied to the friend about how the blood got there. Garey threw the pistol in a nearby wooded area. He then drove home and went to sleep. Jones's body was discovered the next day. Days later, the Cadillac was painted a different color.

Jones died as the result of a contact gunshot wound behind the left ear. The large amount of blood found on Jones's body and garments indicated that she was alive for a time after she was shot. The doctor who performed the autopsy on Jones testified that only 0.5

---

[1] The victim's body was found on September 8, 1998. On October 20, 1998, a Fulton County grand jury indicted Garey for malice murder, felony murder while in the commission of aggravated assault, and aggravated assault. Garey was tried before a jury commencing on March 22, 1999, and on March 25, 1999, the jury acquitted him of malice murder but found him guilty of felony murder and aggravated assault. By sentence dated April 9, 1999, and filed April 12, 1999, Gary was given life imprisonment for felony murder; the aggravated assault was found merged for the purpose of sentencing. A motion for new trial was filed on March 29, 1999, amended on November 18, 1999, and denied on December 2, 1999. A notice of appeal was filed on December 9, 1999, and the appeal was docketed in this Court on April 20, 2000. The case was orally argued on September 12, 2000.

percent of suicides are committed by shooting behind the ear, and for females, a self-inflicted gunshot wound to the head is even rarer. In fact, the doctor stated that he had never had a case of suicide by any person of either sex shooting himself or herself in the back of the head. Investigator Haynie with the medical examiner's office indicated that the blood found on Jones's left palm could not have been there if Jones had been holding the pistol in her left hand when the fatal shot occurred.

1. Garey contends that the trial court erred in refusing to strike Investigator Haynie's blood spatter testimony or to grant a mistrial because the State violated Georgia's Criminal Procedure Discovery Act, OCGA § 17-16-1 et seq., and that such violations infringed his rights to fundamental fairness and due process under the State and Federal Constitutions. But the contentions of statutory and constitutional violations fail, both procedurally and on the merits.

First, Garey failed to timely object either to Haynie testifying as an expert or to the substance of his testimony. The State called Haynie, who at the time of the murder was an investigator with the Fulton County Medical Examiner,[2] to testify in its case-in-chief. Haynie related his qualifications,[3] and the State then offered Haynie as an expert in the area of blood spatter analysis. The court asked for any objection, and defense counsel stated that he was "silent on the issue." It was not until after the completion of Haynie's rather lengthy testimony on direct and following a lunch recess that the defense objected to Haynie testifying as a blood spatter expert. Thus, it can hardly be said that Garey made the required contemporaneous objection in order to preserve his complaints for review on appeal. *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997). What is more, Garey's stated acquiescence of Haynie's qualification as an expert in blood spatter analysis in the face of the trial court's call for objection deprives Garey of the right to further complain about it. *Earnest v. State*, 262 Ga. 494, 496 (3) (422 SE2d 188) (1992).

However, even if the substance of Garey's complaints is considered, he does not prevail. Garey urges that the State was required to

---

[2] At the time of trial, Haynie was employed by the Fulton County District Attorney.

[3] Haynie testified: From 1992 through October 1998, he was the senior investigator of the Death Investigation Squad; he investigated all types of deaths, whether violent or natural; he supervised other investigators and assisted in their training; prior to working with the medical examiner, he was a police officer and investigator for approximately ten years; upon joining the medical examiner's office, he completed a university course in death investigation; he attended continuing education courses since 1992; he had investigated approximately 1,000 or more deaths; in the three or four years prior to trial, the majority of his training had been in blood spatter analysis, including courses at a forensic science laboratory and a university course in computer imaging and blood stain analysis; he taught courses on blood spatter analysis and was certified by the State of Georgia as an instructor; he had been called to do blood spatter analysis in approximately 75 criminal cases.

provide a written report or summary of Haynie's expert findings and conclusions. But OCGA § 17-16-4 (a) (4),[4] relied on by Garey, does not require the State to have its expert prepare a report; rather, it requires that if such a report exists it be made available to the defendant. *Hullander v. State*, 271 Ga. 580, 581 (2) (522 SE2d 658) (1999). And it is undisputed that Haynie's opinions regarding blood spatter were not reduced to writing.[5]

To the extent that Garey may have been surprised regarding the expert's opinion,[6] he had the opportunity to conduct a thorough and sifting cross-examination and any surprise was self-induced. *Hullander v. State* at 581 (2), citing *McKenzie v. State*, 271 Ga. 47, 49 (3) (518 SE2d 404) (1999); *Felder v. State*, 270 Ga. 641, 644 (6) (514 SE2d 416) (1999). For it is uncontested that the State timely provided Garey with a witness list containing Haynie's name, address and telephone number. Yet, Garey maintains that the State was obligated to specify Haynie as a blood spatter expert prior to trial. He argues that such obligation stems from OCGA § 17-16-3, as well as being implicit in OCGA § 17-16-4 (a) (4). However, the purpose of the witness list rule is "to prevent a defendant from being surprised at trial by a witness that the defendant has not had an opportunity to interview." *Mize v. State*, 269 Ga. 646, 653 (7) (501 SE2d 219) (1998). The purpose was served here. The State provided Garey with the information he needed to investigate Haynie and the nature of his knowledge relevant to the case. But Garey apparently chose not to do so. *Hullander v. State* at 581 (2).

2. Garey contends that because of the State's failure to identify Haynie as a blood spatter expert and to provide a written report of his opinions, trial counsel was deprived of the opportunity to adequately prepare, and therefore, trial counsel was ineffective. But, the record discloses that appellate counsel was also trial counsel, and that the issue of ineffectiveness is raised for the first time in this appeal.[7] Under these circumstances, even though Garey cannot be

---

[4] OCGA § 17-16-4 (a) (4) provides in pertinent part that:
The prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant . . . to inspect and copy or photograph a report of any . . . scientific tests or experiments, including a summary of the basis for the expert opinion rendered in the report, or copies thereof, if the state intends to introduce in evidence in its case-in-chief or in rebuttal the results of the . . . scientific test or experiment.

[5] It is also undisputed that Haynie did prepare a report of his investigative activity, which included his observations, and that it was provided to the defense in pretrial discovery.

[6] As the trial court noted in its order denying Garey a new trial, defense counsel's opening statement indicated that the defense anticipated testimony about blood spatter.

[7] The record discloses a document styled as an amended motion for new trial, filed by appellate/trial counsel on December 6, 1999, raising the ineffectiveness of trial counsel.

deemed to have waived the issue of effectiveness of trial counsel, it is not properly before this Court for consideration. *Berry v. State*, 262 Ga. 614, 615 (3) (422 SE2d 861) (1992); *Castell v. Kemp*, 254 Ga. 556 (331 SE2d 528) (1985).

3. Lastly, Garey contends that the evidence was insufficient to support the verdict because his denial that he shot Jones was uncontradicted. But, that is far from the case. The forensic evidence as well as Garey's admitted behavior in callously disposing of Jones, and attempting to eliminate evidence of the fatal shooting belie his claim that Jones took her own life. What is more, determining whether there are evidentiary conflicts or inconsistencies, and assessing the credibility of the witnesses, are the province of the factfinder. *Hampton v. State*, 272 Ga. 284, 285 (1) (527 SE2d 872) (2000); *Berry v. State*, 268 Ga. 437, 438 (1) (490 SE2d 389) (1997). The jury was free to reject Garey's version of events, which it obviously did. *Knight v. State*, 271 Ga. 557, 559 (1) (521 SE2d 819) (1999). The evidence was sufficient to enable a rational trier of fact to find Garey guilty beyond a reasonable doubt of felony murder while in the commission of aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 13, 2000.

*Tony L. Axam,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, W. Swain Wood, Assistant Attorney General,* for appellee.

---

However, the document is unsigned, and there is no indication that it was considered by the trial court.