S02A0249. JONES v. THE STATE.
(563 SE2d 835)

HINES, Justice.

A jury found Floyd Jones guilty of malice murder and possession of a firearm during the commission of a crime in connection with the fatal shooting of his common-law wife Priscilla Carter Jones. He also pleaded guilty to the charge of possession of a firearm by a convicted felon. Jones appeals his convictions arguing that the trial court erred in its charge to the jury on voluntary manslaughter and that his trial counsel was ineffective. We affirm but remand to the trial court for a determination of Jones's claims of ineffective assistance of trial counsel.[1]

---

[1] The crimes occurred on October 7, 1995. On November 7, 1995, a Bulloch County grand jury indicted Jones for malice murder, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime. Jones was tried before a jury April 17-18, 1996, and found guilty of malice murder and possession of a firearm during the commission of a crime; he pleaded guilty to possession of a firearm by a convicted felon. On April 18, 1996, Jones was sentenced to life imprisonment for malice murder, a concurrent five years in prison for possession of a firearm by a convicted felon, and a consecutive five years in prison for possession of a firearm during the commission of a crime. Trial counsel filed a motion for new trial on May 31, 1996, and the motion was denied on October 7, 1997. Trial counsel filed a notice of appeal to this Court on November 6, 1997, but the appeal was dismissed on August 18, 1999, because neither the motion for new trial nor the notice of appeal was timely filed. In June 2000, Jones made a pro se "Motion to Allow Filing of Out-Of-Time Appeal," and on July 12, 2000, the trial court granted the motion and appointed new counsel to represent Jones on appeal. On September 8, 2000, the trial court vacated the order of July 12, 2000 because it had not been timely forwarded to new counsel and entered an amended order granting Jones an out-of-time appeal, appointing new counsel, and directing that a notice of appeal be filed not later than 15 days from the date of the order. On September 18, 2000, new counsel filed a notice of appeal to the Court of Appeals. The appeal was docketed in the Court of Appeals on October 30, 2001, and was transferred to this Court

On October 7, 1995, Priscilla Carter Jones hemorrhaged to death from a twelve gauge shotgun blast to her mouth. After the shooting, around 3:00 a.m., Floyd Jones went to the homes of two neighbors, banged on the doors, and asked to use a telephone; he seemed very upset. Jones stated to each neighbor that Priscilla was dead and told one of them that "[Priscilla's] face is gone" and her "brains are over the place." Neither neighbor had a telephone, so Jones went to the home of Catherine Deever. After Jones told Deever that his wife was dead, Deever called 911. Jones initially stated to Deever that Priscilla had been playing with the shotgun, and it had gone off. Jones later told Deever that he and Priscilla had struggled over the gun and that it had gone off while he was trying to get it from her.

When officers arrived on the scene, they found Jones in the road in front of the residence; Jones appeared to be intoxicated. He stated to the officers, "She killed herself, I didn't do it, she killed herself."

At approximately 3:45 a.m., Investigator Hutchens entered the Jones home and saw the victim sitting on the couch, leaning to the side; she had an obvious injury to the side of her face. There were beer cans and malt liquor containers and a gin bottle on the table in front of the victim. The victim had a pair of scissors in her lap and an old shotgun was leaning against the wall not far from her body. The shotgun contained a number eight bird shot shell; pellets later removed from the victim were consistent with number eight bird shot.

The following day, October 8, 1995, Jones gave a statement to police in which he related that on his way home from work, he stopped by the liquor store and then went home; Priscilla was sitting on the sofa watching television; they began to drink beer and gin; he walked the dog, got some cigarettes and went back home; he and Priscilla drank some more, talked and watched more television; he was getting ready for bed, went into the bedroom, and then emerged to see if Priscilla was going to bed; he saw the shotgun, which was left at the home for Priscilla's protection when he was gone, leaning on the other side of the couch; when he picked up the shotgun to "break the gun open to get the shell out" the shotgun went off and hit Priscilla; at that time he was eight to ten feet from Priscilla.

The next day, October 9, 1995, Jones told police that before they went to bed, he asked Priscilla for the shotgun so that he could unload it, and that when he closed the door, the shotgun just went off. Jones stated that when the shotgun discharged, he was about 15 or 20 feet from where Priscilla was sitting, but later Jones agreed

the same day. The appeal was docketed in this Court on November 2, 2001, and was submitted for decision on December 31, 2001.

that the distance was less than 10 feet.

The forensic evidence was that the shotgun could not have been eight to ten feet away from the victim at the time of the shooting. There was gunpowder residue on the victim's hard pallet, tongue, and sides of the jaw, and her gums and the inside of her lips were stained with soot, but there was no stippling from gunpowder on her face. The pellet charge had gone through the mouth, fragmenting the tongue and the hard pallet, and striking the back of the throat, resulting in injury and damage to cervical vertebrae, the spinal cord, blood vessels, and arteries. The medical examiner determined that the muzzle of the shotgun was either in the victim's mouth or very close to her open mouth at the time of firing. Gunshot residue on the victim's hands was consistent with an "oh my gosh" protective response to grab the barrel of the shotgun.

At trial, Jones's jailmate, Wilkerson, testified that Jones told him about killing his wife. Jones related that the incident started on Wednesday when Jones came home at lunchtime and found a man outside his home; finding the man there bothered Jones because he believed the man's purpose was to get his wife on drugs; when Jones got off work on Friday, he "felt something bad was gonna happen"; after Jones left work he went by the liquor store; he went home, picked up his wife, and they went back to town; they bought drugs and then went home; they drank liquor and smoked drugs; Jones wanted Priscilla to come to bed but she declined; Jones slapped Priscilla and said, "bitch come on, let's go to bed"; Jones went into the bedroom and it then "dawned" on him that Priscilla did not want to go to bed with him because she was "going with another man"; Jones left his bed and saw Priscilla with a pair of scissors in her hand; Priscilla told Jones that if he slapped her again, she would use the scissors to defend herself; Jones reached for the shotgun, put it to Priscilla's mouth and told her to open her mouth; Priscilla refused and when she tried to stand up to knock the shotgun away from her face, Jones shot her; Jones was "gonna blow a hole . . . through her mouth through the back of her head"; Jones shook his wife to make sure she was dead; he heard his wife "drowning in her own blood"; Jones put the shotgun back in the corner; he then wiped himself down with bleach and alcohol to remove any gunpowder residue.

1. The evidence was sufficient to enable a rational trier of fact to find Jones guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Citing *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), Jones contends that his conviction for malice murder should be reversed because the trial court erroneously instructed the jury that it was to consider voluntary manslaughter only if mitigating evidence was

found, thus directing the sequence in which the offenses were to be considered and preventing the jury from considering voluntary manslaughter as an "equal alternative" to malice murder.[2]

But the court's charge did not run afoul of *Edge v. State* or prevent the jury from a full consideration of the offense of voluntary manslaughter. The prohibition of the sequential charge in *Edge v. State* was to prevent a jury from finding a defendant guilty of felony murder before considering the possibility of the defendant's guilt for voluntary manslaughter. *Pye v. State*, 269 Ga. 779, 787 (16) (505 SE2d 4) (1998). Jones was neither charged with nor convicted of felony murder; he was indicted for and convicted of malice murder. Even if the offense of felony murder had been before the jury," 'there can be no harmful *Edge* violation when the jury convicts on a malice murder charge.' " *Thompkins v. State,* 272 Ga. 835, 837 (4) (536 SE2d 747) (2000), quoting *Taylor v. State*, 271 Ga. 497 (2) (521 SE2d 814) (1999).

Trial courts are not required "to follow an exact formula in instructing juries so long as the charge as a whole ensures that the jury will consider whether evidence of provocation and passion might authorize a verdict of voluntary manslaughter." *Tessmer v. State,* 273 Ga. 220, 223 (3) (539 SE2d 816) (2000). Here, not only did the court's instruction, which paralleled the suggested pattern jury instruction,[3] ensure that the jury would consider voluntary manslaughter, it directed the jury to examine evidence, if any, warranting a finding of the commission of the lesser offense of voluntary manslaughter *before* it could find the commission of malice murder. There was no error.

3. Appellate counsel was not appointed until after Jones's motion for new trial was denied. Inasmuch as Jones raises claims of ineffective assistance of trial counsel for the first time on appeal, the case is remanded to the trial court for an evidentiary hearing on such claims. *Potter v. State*, 272 Ga. 430, 432 (3) (530 SE2d 725) (2000).

*Judgments affirmed and case remanded for proceedings consistent with Division 3 of the opinion. All the Justices concur.*

DECIDED APRIL 29, 2002.

*Kicklighter & Persse, Robert L. Persse,* for appellant.

---

[2] Preceding the statutory definition of voluntary manslaughter, the trial court charged, "after consideration of all the evidence before you would be authorized to return a verdict of guilty of malice murder you must first determine whether mitigating evidence if any would cause the offense to be reduced to voluntary manslaughter." This was later repeated in a recharge to the jury.

[3] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed. 1991), p. 73.

*R. Joseph Martin III, District Attorney, Richard A. Mallard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.