S04A1279. FOLSON v. THE STATE.
(606 SE2d 262)

BENHAM, Justice.

This appeal is from Eugene Folson, Jr.'s conviction for felony murder, with cruelty to children as the underlying felony, based on the death of Canashus Ricardo Brown, Jr., Folson's two-year-old stepson.[1] The mother of the victim testified at trial that Folson telephoned her at work to say something was wrong with Canashus; that she came home, found Canashus was not breathing, and called 911; and that Folson told her Canashus fell in the bathtub, and was reluctant to give the child to her. A police officer who responded to the 911 call and attempted resuscitation testified the child was cold to the touch and that he noted a knot over the child's left eye and bruises on his back and chest. The police officer testified Folson told him at the scene that after he bathed the child and let him play with the other children, Canashus became sleepy and Folson put him to bed, and

---

[1] The crime was committed on December 31, 2000, and Folson was indicted on February 5, 2001, for malice murder, felony murder (cruelty to children), and cruelty to children. After a one-day trial on October 31, 2001, a jury acquitted Folson of malice murder and convicted him of felony murder and cruelty to a child. The trial court sentenced Folson to life imprisonment for felony murder, the underlying felony having merged by operation of law. Folson's motion for new trial, filed November 15, 2001, was denied by an order filed April 18, 2003. Pursuant to a notice of appeal filed that same day, the appeal was docketed in this Court on April 6, 2004, and was submitted for decision on the briefs.

could not wake him later. The medical examiner who performed the autopsy of the victim described the cause of death as loss of blood due to a laceration of the liver caused by blunt force trauma to the abdomen, most likely a punch with a fist. Other injuries to the child included swelling and bruising of his forehead and the right side of his head, a circular bruise on the back of his head, multiple bruises on his torso in patterns suggesting blows with knuckles, bruising in both armpits, and bruising on the chest in a pattern suggesting blows with a strap or slapping with fingers or being held in a firm grip. The medical examiner testified all the bruises on the child's body occurred at or about the same time and were unlikely to have been caused by accidental trauma because they were in well-protected areas.

Appellant testified at trial that when he bathed the child, he left him in the tub to deal with a pot he heard boiling on the stove but returned to the bathroom upon hearing Canashus crying and coughing. Believing the child had fallen under the water, he began to hit the child's back, then pressed his abdomen in an attempt to perform CPR. He testified Canashus calmed down but continued to whine and refused to eat, and he put him with the other children to play, then returned him to bed when he became sleepy. Folson denied making the statement at the scene to which the police officer testified, but admitted he did not mention at the scene that Canashus had fallen in the bathtub or that he had attempted to perform CPR.

1. The evidence summarized above was sufficient to authorize a rational trier of fact to find Folson guilty beyond a reasonable doubt of felony murder with cruelty to children (OCGA § 16-5-70 (b)) as the underlying felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Folson's argument that the evidence was not sufficient to show either the excessive pain or the malice required for a conviction for cruelty to children is controlled adversely to him by our holding, based on very similar evidence, in *Kennedy v. State*, 277 Ga. 588, 590 (1) (592 SE2d 830) (2004):

> Evidence of the child's age, the extent of [the] injuries, the nature of the assault to which the child was subjected, and the force with which the child was struck is sufficient evidence from which a jury, applying generally-accepted societal norms, can conclude whether the defendant caused the child cruel or excessive physical pain. . . . [Cits.] The mental state of a defendant required to be established to prove cruelty to children is " 'the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood

that such harm might result.'" [Cit.] The jury was authorized to conclude that appellant's actions were malicious from the evidence that he, an adult, repeatedly struck the [two-year]-old victim wilfully and wantonly with "'an awareness of a plain and strong likelihood that such harm might result.'" [Cit.]

(Punctuation and emphasis omitted.)

2. Folson contends the trial court erred in ruling that a statement he made to a police officer was admissible. He bases his contention on his testimony that his right not to incriminate himself was not explained to him until after his statement had been taken, and on inconsistencies on the statement and waiver of rights forms regarding the time the interrogation began and in the testimony of an investigator present during questioning. The interrogating officer explained the time discrepancy by stating his practice was to put the starting time of the interview process on both forms, and both the interrogating officer and the observing investigator testified the interrogating officer explained Folson's rights to him prior to beginning the interrogation.

In ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.

(Punctuation omitted.) *Escutia v. State*, 277 Ga. 400, 401-402 (1) (589 SE2d 66) (2003). Given the testimony of the officers and the explanation of the time discrepancy on the forms, we conclude the trial court's findings that Folson was properly advised of his rights and that the statement was voluntarily given were not clearly erroneous and will, accordingly, be upheld.

3. Eight autopsy photographs were exhibited to the jury and admitted into evidence. Folson contends the admission of so many gruesome photographs was unnecessary (see *McCullough v. State*, 255 Ga. 672 (2) (341 SE2d 706) (1986) (photograph must be necessary to establish a material fact that could only become apparent because of the autopsy)) and was unduly prejudicial. See *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347) (1983). However, in a hearing outside the presence of the jury, testimony by the medical examiner established for each photograph the purpose it served in demonstrating the

severity of the injuries suffered by the victim and that the fact being demonstrated could not have been shown without the autopsy.

> The medical examiner testified that without these photographs, the internal injuries [and] hemorrhaging . . . would not be apparent and that the injuries could not be shown merely by photographs of the exterior of the body. Because these injuries did not become apparent until the autopsy, the photographs were admissible to aid the medical examiner in describing the cause and manner of death. [Cits.]

*Jackson v. State*, 272 Ga. 429, 430 (2) (531 SE2d 700) (2000).

4. The trial court rejected Folson's request to charge on the offense of misdemeanor involuntary manslaughter. Folson argues on appeal that rejection of his requested instruction was reversible error because his testimony regarding his attempt to perform CPR supplied the factual predicate for a finding that he caused the child's death "without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm," (OCGA § 16-5-3 (b)), and because that was his sole defense.

"A charge on involuntary manslaughter is not warranted even if it is the sole defense if the evidence does not support the charge." *Hayes v. State*, 261 Ga. 439, 443 (6) (a) (405 SE2d 660) (1991). The evidence to which Folson points in asserting his right to a charge on involuntary manslaughter was his own testimony that he struck Canashus on the back to clear his airway and pressed the child's abdomen in an effort to perform CPR. If the jury believed Folson's testimony, it could have found that the child's injuries were inflicted by accident, and that no crime was committed (see *Hayes v. State*, 268 Ga. 809 (9) (493 SE2d 169) (1997)), but his testimony did not suggest, and he has not pointed out on appeal, and our review of the record has not revealed any evidence of an unlawful manner in which his lawful act of attempting to resuscitate the child was performed. Indeed, had Folson's alleged efforts to perform CPR been shown to have become so violent as to produce the injuries described by the medical examiner, his actions would have constituted the offense of reckless conduct and he would not have been entitled to a charge on lawful act-unlawful manner involuntary manslaughter. *Paul v. State*, 274 Ga. 601 (3) (a) (555 SE2d 716) (2001). The evidence did not support the giving of an instruction on involuntary manslaughter and we see no error in the trial court's rejection of the requested instruction. *Hayes v. State*, 261 Ga. 439, supra.

5. In his last enumeration of error, Folson complains of the trial court's charge on the offense of cruelty to children, objecting that the charge included as elements of the offense the infliction of both

physical and mental pain when the evidence was tailored only to include physical abuse. In *Kennedy v. State*, supra at 590, this Court held that a jury could apply generally-accepted societal norms to conclude whether a defendant caused a child cruel or excessive physical pain. That principle was applied to mental pain by the Court of Appeals in *Sims v. State*, 234 Ga. App. 678, 679 (1) (507 SE2d 845) (1998): "[T]he law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts 'cruel' or 'excessive' pain (in this instance, mental rather than physical pain)." Applying that principle to the evidence adduced at trial here, we conclude that a jury, applying generally-accepted societal norms, could deduce from the evidence that a two-year-old child who endured a beating from his own stepfather in which he was struck and gripped tightly enough to cause bruising and was hit with a fist hard enough to lacerate his liver, and then whined, refused to eat, and became listless, suffered cruel and excessive mental pain in addition to the physical pain caused by the beating. Folson's complaint regarding the jury instruction and the evidence required to meet the requirement of the instruction is, thus, without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 22, 2004.

*Lon P. Kemeness*, for appellant.
*Paul Bowden, District Attorney, Bradford L. Rigby, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.