## S11A0722. WALDEN v. THE STATE.
(717 SE2d 159)

CARLEY, Presiding Justice.

After a jury trial, Appellant Amy Elizabeth Walden was found guilty of the malice and felony murder of her husband Johnny Clint Walden, possession of a firearm during the commission of a crime, concealing the death of another, and two counts of cruelty to children in the second degree. The felony murder verdict was vacated by operation of law, and the trial court entered judgments of conviction on the remaining guilty verdicts. Appellant was sentenced to life imprisonment for the malice murder, consecutive terms of ten years for concealing the death of another and five years for the weapons charge, and ten-year terms for each count of cruelty to children to run concurrent with each other but consecutive to the other sentences. A motion for new trial was denied, and Appellant appeals.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that the victim had shown Appellant how to shoot a gun resembling the one which caused his death. Appellant lied to the victim about the extremely large debts which she had incurred. He threatened to divorce her, and she had once told a family member that she would kill him before going through another divorce. The victim was killed in his house by a single gunshot to his head. The State's pathologist testified that the autopsy showed the absence of any contact wound and that he determined that the manner of death was homicide.

After the victim's death, Appellant, who was the only adult in the house, moved and covered up the victim's body, kept it in the house, and stayed there with her two young children for nearly three days, except for a few hours when they stayed with the victim's father while Appellant cleaned house. During those three days, Appellant repeatedly lied to the victim's relatives regarding his whereabouts and refused to let them enter the house. Eventually, the

---

[*] The crimes occurred on August 22, 2004, and the grand jury returned an indictment on October 20, 2004. The jury found Appellant guilty on April 14, 2006, and the trial court entered the judgments of conviction and sentences on May 16, 2006. The motion for new trial was filed on June 12, 2006 and denied on November 17, 2010. Appellant filed the notice of appeal on December 10, 2010. The case was docketed in this Court for the April 2011 term and submitted for decision on the briefs.

police were called, the stench from the decomposing body was overwhelming, and Appellant, appearing unconcerned, admitted that the victim was dead. Although Appellant told police and testified at trial that the victim had committed suicide, she made inconsistent and incriminating statements to one cellmate that the victim was accidentally shot during a fight over finances and to another cellmate that she purposely shot him after having sex with him.

Appellant contends that the evidence was insufficient to convict her of malice or felony murder. She particularly relies upon evidence that the victim's hands tested positive for gunshot residue and upon the pathologist's testimony that some suicides are not the result of contact wounds. However, although the pathologist could not conclusively state that the fatal wound was caused by someone other than the victim himself, the pathologist testified that it is very rare for a suicide by gunshot not to result in a contact wound, especially in men. *Evans v. State*, 271 Ga. 614, 615 (1) (523 SE2d 850) (1999). See also *Garey v. State*, 273 Ga. 133, 134-135 (539 SE2d 123) (2000). Furthermore, a gunshot residue analyst with the state crime lab testified that the presence of such residue can be caused by the hand being near the barrel of a gun when it is fired, instead of actually firing the gun. *Montgomery v. State*, 260 Ga. 43, 44-45 (389 SE2d 209) (1990). See also *Jones v. State*, 275 Ga. 156, 158 (563 SE2d 835) (2002).

> Whether suicide is a reasonable hypothesis was a question for the jury and where circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of the homicide at the hands of the accused, this Court will not disturb the guilty verdict unless it is unsupportable as a matter of law. [Cit.]

*Evans v. State*, supra. The circumstantial evidence in this case was substantial, including not only the nature of the gunshot wound, but also Appellant's motive to harm the victim, and her prolonged coverup and conflicting accounts of his death. See *Hall v. State*, 287 Ga. 755, 756 (1) (699 SE2d 321) (2010); *Hannah v. State*, 278 Ga. 195, 196 (599 SE2d 177) (2004); *Wright v. State*, 274 Ga. 730, 731 (559 SE2d 437) (2002).

"The jury was free to reject [Appellant's] version of events, which it obviously did. [Cit.]" *Garey v. State*, supra at 137 (3). "The evidence, although circumstantial, was sufficient for a rational trier of fact to reject the defense theory that [the victim's] death was a suicide and to find [Appellant] guilty of [malice] murder beyond a reasonable doubt. [Cit.]" *Wright v. State*, supra at 731 (1). Because the trial court correctly entered a judgment of conviction on the

malice murder verdict and not on the felony murder count, we need not consider the sufficiency of the evidence as to that alternative charge. *Frezghi v. State*, 273 Ga. 871-872 (1) (548 SE2d 296) (2001); *Goforth v. State*, 271 Ga. 700, 701 (2) (523 SE2d 868) (1999).

Appellant also contends that the evidence was insufficient to convict her of cruelty to children in the second degree. Under OCGA § 16-5-70 (c), "[a]ny person commits the offense of cruelty to children in the second degree when such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain." The indictment alleged that Appellant with criminal negligence caused the children, who were under the age of 18, excessive mental pain by allowing the corpse of the victim, who was one child's father and the other's stepfather, to remain in the children's residence in their presence for an excessive period of time. Appellant argues that there was no testimony that the children witnessed the victim's death, knew of the death, saw the body, or were even bothered by the odor. Appellant also points to testimony indicating that the older child did not know what was going on. However, several witnesses testified that the stench was pervasive and was strong enough to cause experienced officers to vomit. Although we have held that evidence of an unsanitary condition is not enough by itself to prove the malice element of cruelty to children in the first degree, cruelty to children certainly may be committed by keeping a child in an unsanitary condition if the basic elements of the offense are shown. *Brewton v. State*, 266 Ga. 160 (465 SE2d 668) (1996).

> "The determination of what is cruel or excessive physical or mental pain is to be made by the jury. 'Cruel' and 'excessive' are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts 'cruel' or 'excessive' pain (in this instance, mental rather than physical pain). There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. There will be other areas on each end of the scale. . . . We must determine only whether the circumstances here, taking into account the evidence in favor of the finding and all reasonable inferences from that evidence, would prohibit the finding made by the jury." [Cit.] Moreover, "a determination of what constitutes excessive mental pain need not depend solely on the victim's testimony." [Cit.]

*Bunn v. State*, 307 Ga. App. 381, 382-383 (1) (a) (705 SE2d 180) (2010). See also *Folson v. State*, 278 Ga. 690, 694 (5) (606 SE2d 262) (2004). Likewise, "[e]xpert testimony is not necessary when the jurors may make the determination on their own. [Cits.]" *Sims v. State*, 234 Ga. App. 678, 680-681 (1) (a) (507 SE2d 845) (1998). In this case, the jury was authorized to conclude that the presence of an unembalmed corpse in the minor children's home for nearly three days was a criminally negligent act constituting an unsanitary condition and to infer from the reaction of the police officers that the resulting stench caused the children excessive mental pain. See *Alexander v. State*, 274 Ga. 787, 790 (1) (c) (561 SE2d 64) (2002). Neither an incomplete understanding by the children nor an absence of physical symptoms, such as vomiting, would preclude the internal experience of excessive mental pain. See *Sims v. State*, supra at 680 (1) (a).

Accordingly, we hold that the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Appellant was guilty of all crimes for which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During voir dire, Appellant made an oral motion for a change in venue based on the small size of the community and on the facts that nine of the 47 prospective jurors were excused for cause because they had already formed an opinion and that another 24 had heard about the case. Appellant enumerates the trial court's denial of this motion as error.

> " 'The trial court has the discretion to grant a change of venue and its discretion will not be disturbed absent an abuse of that discretion. In a motion for a change of venue [when the death penalty is not sought], the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. . . .' (Cits.)" [Cits.] As for the first showing, "(e)ven in cases of widespread pretrial publicity, situations where such publicity has rendered a trial setting inherently prejudicial are extremely rare." [Cit.] The record must establish that the publicity contained information that was unduly extensive, factually incorrect, inflammatory or reflective of an atmosphere of hostility. [Cits.] [Appellant] has made no such showing.

*Gear v. State*, 288 Ga. 500, 501-502 (2) (705 SE2d 632) (2011). Indeed, the three newspaper articles on which Appellant relies are not in the record. Moreover, she indicates that they were all

published more than a year before the trial. See *Tolver v. State*, 269 Ga. 530, 533 (4) (500 SE2d 563) (1998). Appellant's assertion regarding the small size of the community, "standing alone, was not a sufficient basis for a change of venue." *Williams v. State*, 272 Ga. 335, 336 (3) (528 SE2d 518) (2000).

> As to actual prejudice, "the question is not the number of jurors who had heard about the case; rather, the question is whether those jurors who had heard about the case could lay aside their opinions and render a verdict based on the evidence. (Cits.)" [Cit.]

*Gear v. State*, supra at 502 (2). This " 'second test involves review of the voir dire examination of potential jurors.' " *Hughes v. State*, 257 Ga. 200, 203 (2) (357 SE2d 80) (1987). In this case, however, although the court reporter transcribed the motion for change of venue and the trial court's ruling, the actual questions and answers of the prospective jurors "were not reported, and defense counsel made no motion at that time to include them in the record or to have them reconstructed for the record." *State v. Graham*, 246 Ga. 341, 342 (271 SE2d 627) (1980). Because the death penalty was not sought, it was required only that any objection or motion during the course of voir dire and the trial court's ruling thereon be reported. OCGA § 5-6-41 (d); *State v. Graham*, supra at 343. See also OCGA §§ 17-8-5 (a), 5-6-41 (a). If Appellant desired a more complete record of voir dire, she "should have made a motion at the time . . . to have the questions and answers made a part of the record, since the party asserting error must show it by the record. [Cit.]" *State v. Graham*, supra. We have "emphasize[d] that if defense counsel want voir dire to be taken down, they must make a specific request to that effect." *Bryant v. State*, 270 Ga. 266, 271 (4), fn. 18 (507 SE2d 451) (1998). Since voir dire was not transcribed, we must assume that the jurors who were not excused for cause did not have such fixed opinions that they could not be impartial judges of Appellant's guilt. See *Cammon v. State*, 269 Ga. 470, 473 (4) (b) (500 SE2d 329) (1998). "We must therefore conclude that the trial court did not abuse its discretion in denying [the] motion for a change of venue." *Hughes v. State*, supra. Moreover, the mere fact that 21% of prospective jurors were excused for cause because they already had an opinion that they were unable to lay aside "is not indicative of such prejudice as would mandate a change in venue . . . . [Cit.]" *Gear v. State*, supra. See also *Chancey v. State*, 256 Ga. 415, 431 (5) (C) (349 SE2d 717) (1986).

*Judgments affirmed. All the Justices concur, except Hunstein, C. J., and Benham, J., who concur in part and dissent in part.*

HUNSTEIN, Chief Justice, concurring in part and dissenting in part.

While I concur in the affirmance of appellant's convictions for murder, concealing the death of another and possession of a firearm during the commission of a crime, I respectfully dissent to the majority's affirmance of the convictions on two counts of cruelty to children because the evidence failed to establish beyond a reasonable doubt an essential element of the crime, namely, that the children suffered cruel or excessive mental pain.

1. The sole basis for the two cruelty to children charges is the allegation that appellant's seven-year-old daughter and three-year-old son suffered "excessive mental pain" by appellant's act of "allowing the corpse of Johnny Clint Walden, the child[ren's stepfather and father, respectively], to remain in the child[ren]'s residence, in the presence of the child[ren] for an excessive period of time." The majority upholds the convictions for these charges on the basis that the children were subjected to "excessive . . . mental pain" under OCGA § 16-5-70 due to the foul odor emanating from the victim's decomposing body.

The evidence, construed in support of the jury's verdict, establishes the following. The murder was committed after appellant and the victim returned home from attending Sunday school and church services on August 22, 2004. Law enforcement officers entered the home for the first time around midnight on August 24, at which time the corpse had been decomposing for two and one-half days. The experienced officers who entered the living room where the victim's body was located testified that they were greatly distressed by their encounter with the smell. However, unlike the officers, the children had been in the house since the murder occurred; hence, they would have been exposed to the smell gradually over the 60-hour period. There was no evidence that either child ever entered the living room where the smell would have been the most concentrated, and no witness testified that the living room smell was just as strong in the other parts of the house where the children frequented. The children themselves did not testify, and the transcript is devoid of any evidence of complaints expressed by the children to any witness about the smell, even though the older child attended school and both children at one time or another spent several hours visiting the victim's parents during the relevant period. While the State called the victim's father to testify about these visits, the witness did not testify that the children behaved any differently than in past visits; he did not testify that the children made any complaints or even any comments about the smell; and he did not testify that either child had any reluctance about returning home for any reason, smell or otherwise. The evidence reflects nothing unusual about the chil-

dren's behavior when they and appellant were escorted out of the home by law enforcement officers around midnight on Tuesday, August 24, even though the children would then have been escaping the smell at its worst. To the contrary, the victim's sister testified that she specifically asked the older child at that time if the child "knew what was going on and [the child] said no." And even though both children were immediately handed over to family members upon their exit from the house, with the seven-year-old going to the victim's sister and the three-year-old going to the victim's father, neither the sister nor the father, who both testified, indicated that they could smell the odor on either child.

The transcript contains no evidence that shows that either the three-year-old child or the seven-year-old child understood the nature of the smell in the house, i.e., that it emanated from a dead body. Likewise, there was no evidence that either child was aware that the source of the smell was the victim's decomposing body. Finally, there was no expert testimony to explain how these young children, despite the absence of any overt manifestations of trauma, suffered excessive mental pain as a result of their exposure to the odor.

2. As revealed by a review of our case law, cruelty to children cases based exclusively on cruel or excessive *mental* pain typically fall within two fact scenarios. The first scenario involves a child who has witnessed the defendant killing or attacking the victim, who is usually a parent or close family relative of the child. See, e.g., *Hall v. State*, 261 Ga. 778 (7) (415 SE2d 158) (1991) (father shot son in front of son's two sisters); *Sims v. State*, 234 Ga. App. 678 (1) (507 SE2d 845) (1998) (father stabbed mother in presence of children). The second situation is the one on which the majority relies, namely, the exposure of a child to unsanitary conditions. Hence, the majority cites to *Brewton v. State*, 266 Ga. 160 (465 SE2d 668) (1996), in which this Court addressed the issue of whether the act of raising a child in unsanitary conditions can ever constitute the offense of cruelty to children. While we held that the offense "*may* be committed by raising a child in such unsanitary conditions that the child suffers cruel or excessive physical or mental pain" (emphasis supplied), id. at 160 (1), we also held that

the basic elements of the offense must be shown by evidence. That is, there must be evidence establishing the age of the child, that the child suffered physical or mental pain, that the pain was cruel or excessive, that the defendant caused the pain, and that the defendant acted maliciously in so doing.

Id. In *Brewton*, we reversed the conviction upheld by the Court of Appeals on the basis that the State had failed to show the requisite malice merely by proof of the unsanitary conditions in which the defendant's two children were raised. Id. at 162. As reflected in the Court of Appeals' opinion, the "extremely unsanitary conditions" at issue in that case included but were " 'not limited to: piles of trash on the floor, rotting food and dirty dishes in the kitchen, an uncaged parrot with bird droppings everywhere, two live ducks in hall bathroom, roaches crawling on floor and the smell of trash and rotten food throughout the house.' " *Brewton v. State*, 216 Ga. App. 346, 348 (3) (454 SE2d 558) (1995).

Consistent with the holding in *Brewton* regarding unsanitary conditions creating excessive mental pain to support a cruelty to child conviction, the Court of Appeals in *Staib v. State*, 309 Ga. App. 785 (711 SE2d 362) (2011), upheld the defendant's conviction for that offense where an officer testified that "the entire house smelled strongly of urine, feces and ammonia, stated that the odor was 'pretty horrible,' and compared the odor of the house to a 'landfill' and 'cat litter box.' " Id. at 790 (2). However, that was not the only evidence in the case. The State also adduced evidence that every floor in the house was covered with garbage; that one child was found unclothed in a feces-stained crib where she was standing in her own urine; the other child was found wearing only shorts in a locked room smelling of the child's own urine and so filled with garbage that the officers were unable to open the door more than two feet; and that both children, rather than displaying the typical behavior of screaming and crying when removed from their home, instead smiled and seemed happy to leave and were thereafter " 'super excited to be in the bath tub.' " Id. at 791 (2).

In contrast to those cases, the crime scene investigator in this case testified that the kitchen in appellant's house, while cluttered, was clean, without dirt, soiled dishes or the like; that the only food left out looked like recently consumed meals; and that the remaining areas of the house, including the bedrooms, were "not remarkable." The photos taken by the crime scene investigator and introduced into evidence show a reasonably clean, tidy house. Even the living room photos reflect a tidy room with the victim's body on the floor by the sofa covered by a "tremendous" amount of sheets, pillows and other material that minimized any view of the body. As noted above, there was no evidence that the children were ever directly exposed in any manner to the body itself. Thus, unlike *Brewton v. State* and *Staib v. State*, supra, the sole "unsanitary" condition present in this case is the foul odor in the house emanating from the victim's corpse.

3. The evidence in this case thus presents the situation where a very bad smell in an otherwise clean and tidy house is the sole source

of the excessive mental pain appellant allegedly inflicted on the victims. The problem, however, is that there is no direct evidence whatsoever that the victims were distressed by the smell. Nor was expert testimony adduced to establish that the victims experienced excessive mental pain due to the smell notwithstanding the complete lack of any overt manifestations of trauma resulting from the children's exposure to the smell. The majority holds that the State rectified this utter absence of evidence by adducing testimony regarding the extreme distress felt by experienced law enforcement personnel upon entering the home. But I cannot agree with the majority that the jury could reasonably infer solely from the distress felt by the adults that the children must likewise have experienced that distress. That is because the adults did not occupy a situation comparable to that of the children. The adults had not been in the home ever since the body began to decompose so as to grow accustomed to the smell over time. Unlike the adults, the children did not know and thus could not have been distressed by the fact that the bad smell in their house came from the decomposing corpse of their murdered father/stepfather. Unlike the adults, the children did not experience the smell in the living room where the corpse was located but instead stayed in the back of the house; although the smell was undoubtedly present there, given evidence that it could be detected outside the home, there was no evidence that the smell was as intense in the children's area of the home as it was in the living room.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which she is charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). For a conviction under OCGA § 16-5-70, that meant the State had to prove that appellant's children suffered mental pain because of the smell and that the mental pain they suffered was cruel or excessive. *Brewton v. State*, supra, 266 Ga. at 160 (1). Because there was no direct evidence that the children here suffered excessive mental pain because of the smell, because there was no expert evidence to explain why they so suffered despite the lack of overt manifestations of trauma and because there were crucial differences between the children and the adult witnesses that rendered the experience of the adults inapplicable to the children, I respectfully disagree with the majority that the State carried its burden of proving beyond a reasonable doubt that appellant was guilty of two counts of cruelty to children.

I am authorized to state that Justice Benham joins in this partial concurrence and partial dissent.

DECIDED OCTOBER 17, 2011.

*Barbara B. Claridge*, for appellant.

*Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney, Samuel S. Olens, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.